[No. D045017. Fourth Dist., Div. One. Sept. 16, 2005.]

CPF AGENCY CORP., Plaintiff and Appellant, v.
R&S TOWING, Defendant and Respondent.

**COUNSEL**

Law Office of Sean Brew and Sean Brew for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Tom Greene, Chief Assistant Attorney General, Ronald A. Reiter and Ian K. Sweedler, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Appellant.

J. Parkeson Miller for Defendant and Respondent.

OPINION

**O'ROURKE, J.**—Plaintiff CPF Agency Corp., on behalf of itself and the general public, sued R&S Towing (defendant), alleging defendant over-charged vehicle owners for vehicle storage fees in violation of Vehicle Code section 22658, subdivision (i)(2).[1] On defendant's motion, the superior court struck plaintiff's causes of action for fraud, negligence per se and violations of California's unfair competition law (Bus. & Prof. Code, § 17200 et seq., hereafter the UCL) on grounds the state regulation was preempted by federal law. On appeal, plaintiff contends the court erred in striking its causes of action because (1) defendant's motion was untimely, and (2) the storage fee regulation in section 22658 falls within express exceptions to the preemption provisions of the federal law at issue. The Attorney General has submitted an amicus curiae brief in support of plaintiff's position. We reject plaintiff's procedural challenges, but find merit to its assertion that the state regulation is excepted from preemption. We therefore reverse the judgment and remand the matter with directions that the court enter a new order denying defendant's motion.

FACTUAL AND PROCEDURAL BACKGROUND

We limit our recitation of facts to those appearing in plaintiff's first amended complaint, which is the operative pleading in this matter, and to matters that are subject to judicial notice. (Code Civ. Proc., § 437.)

Defendant is in the business of towing, impounding and storing vehicles. On July 9, 2002, defendant towed a vehicle owned by plaintiff and operated by one of its employees, Joel Fitzgerald, from private property located at 3902 Julie Lane in Spring Valley. Defendant impounded the vehicle and placed it in one of its storage facilities shortly after 1:00 p.m. Just before noon the next day, Fitzgerald arrived at defendant's business location to retrieve the vehicle and was presented with an invoice for $200, representing a towing fee of $150 and a storage fee of $50 for two days of storage ($25 per day). After questioning the storage fees on the invoice, Fitzgerald was told it was defendant's company policy to charge $25 for each calendar day the vehicle was in storage and if he wanted the vehicle released he would have to pay the full $200. Fitzgerald paid the amount and regained possession of the vehicle.

Plaintiff sued defendant alleging causes of action for fraud, negligence per se, and violations of the UCL. In its third cause of action, plaintiff alleged

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated. Plaintiff refers to R&S as "R&S Towing Service." In its opening brief R&S answered as R&S Towing, pointing out it was erroneously served as R&S Towing Service. All references to R&S will be to R&S Towing.

defendant "systematically, routinely, and knowingly failed to comply with the requirements of California Vehicle Code section 22658[, subdivision] (i)(2) when charging its excessive storage fees," thereby engaging in unfair business practices and unfair competition. Plaintiff also sought injunctive relief. Defendant filed its answer in October 2003.

In March 2004, defendant filed a "motion to dismiss" plaintiff's first, second, and third causes of action for fraud, negligence per se, and violation of the UCL for lack of subject matter jurisdiction, citing Code of Civil Procedure section 396. It argued the three causes of action were subject to dismissal because Vehicle Code section 22658, subdivision (i), which limits the storage fees that may be charged by towing services, was preempted by the Federal Aviation Administration Authorization Act of 1994 (the FAAAA), title 49 United States Code section 14501 et seq.

The court treated defendant's motion as a motion to strike and tentatively granted it without leave to amend. It ruled the storage fee regulation of section 22658, subdivision (i)(2) was related to the price, route or service of a motor carrier, and, implicitly rejecting plaintiff's argument it fell within exceptions provided for in the FAAAA, concluded the statute was preempted. Following arguments on the matter and with one additional comment concerning its interpretation of the FAAAA, the court adopted its tentative ruling as the final ruling. Plaintiff dismissed its remaining causes of action and the parties entered into a stipulated judgment and order of dismissal, which was entered by the trial court in July 2004. This appeal followed.

## DISCUSSION

### I. *Propriety and Timeliness of Defendant's Motion*

Plaintiff contends this appeal may be resolved solely on procedural grounds, namely, that defendant's motion to dismiss was without authority in California law, and even if the motion was properly deemed a motion to strike, it was untimely because it was not filed before or at the same time as defendant filed its answer. (Code Civ. Proc., § 435, subd. (b)(1) ["Any party, within the time allowed to respond to a pleading may serve and file a notice of motion to strike the whole or any part thereof"].) Defendant responds that the court had authority to rule on the motion at any time under Code of Civil Procedure section 436, and acted within its discretion in doing so.

We agree with defendant. "The proposition that a trial court may construe a motion bearing one label as a different type of motion is one that has existed for many decades. 'The nature of a motion is determined by the nature of the relief sought, not by the label attached to it. The law is not a

mere game of words.' [Citation.] Neither the Legislature, nor the California Supreme Court, nor any Court of Appeal has ever challenged that notion. . . . The principle that a trial court may consider a motion regardless of the label placed on it by a party is consistent with the court's inherent authority to manage and control its docket." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 193 [26 Cal.Rptr.3d 790], citing Code Civ. Proc., §§ 128, subd. (a), 187; see also *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 284–285 [54 Cal.Rptr.2d 655] [affirming court's grant of a motion for judgment on eve of trial even though procedurally irregular, under court's inherent "equity, supervisory and administrative" powers].)

■ Under these principles, the court had inherent authority to treat defendant's motion as a motion to strike, and to consider it on the merits even though the motion was filed after defendant had filed its responsive pleading. Code of Civil Procedure section 436 grants the trial court discretion to consider striking improper matter from pleadings "at any time in its discretion."[2] Plaintiff has not demonstrated how the trial court's decision to consider the preemption question on the merits was a clear abuse of discretion in view of the court's inherent powers, as well as the express statutory authority to consider the matter at any time. We do not ascertain any such abuse of discretion in the trial court's decision. Accordingly, we turn to the merits of plaintiff's appeal.

## II. *Preemption*

We decide here whether a particular provision within section 22658—subdivision (i)(2), regulating storage fees charged by towing companies—is preempted by the FAAAA. The parties concede, and we agree, the issue presented is one of law. (*People ex rel. Renne v. Servantes* (2001) 86 Cal.App.4th 1081, 1087 [103 Cal.Rptr.2d 870] (*Servantes*).)

### A. *Principles of Federal Preemption*

■ "Article VI of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' " (*Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 516 [120 L.Ed.2d 407, 112 S.Ct. 2608].) Under the supremacy clause, state law that conflicts with federal law is " 'without effect.' " (*Cipollone, supra,* at p. 516, quoting *Maryland v.*

---

[2] In full, the statute provides: "The court may, upon a motion made pursuant to Section 435, *or at any time in its discretion,* and upon terms it deems proper: [¶] (a) Strike out any irrelevant, false, or improper matter inserted in any pleading. [¶] (b) Strike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc., § 436, italics added.)

*Louisiana* (1981) 451 U.S. 725, 746 [68 L.Ed.2d 576, 101 S.Ct. 2114].) "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.' [Citation.] Accordingly, ' "[t]he purpose of Congress is the ultimate touchstone" ' of pre-emption analysis," and its intent may be express in the federal statute's language or implicit in the statute's structure and purpose. (*Cipollone, supra,* 505 U.S. at p. 516.) Absent an express congressional command, state law is preempted if it actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field " ' "as to make reasonable the inference that Congress left no room for the States to supplement it." ' " (*Ibid.*)

 "When . . . Congress considers the issue of preemption and adopts a preemption [provision in a] statute that provides a reliable indication of its intent regarding preemption, the scope of federal preemption is determined by the preemption [provision] and not by the substantive provisions of the legislation. [Citation.] The reason is that 'Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted.' " (*Lindsey v. Tacoma-Pierce County Health Dept.* (9th Cir. 1999) 195 F.3d 1065, 1069, citing *Cipollone v. Liggett Group, Inc., supra,* 505 U.S. at p. 517.) Whether a federal statute expressly preempts a state law is a "question, at bottom, . . . of statutory intent." (*Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 383 [119 L.Ed.2d 157, 112 S.Ct. 2031].)

B. *The Interstate Commerce Act and FAAAA*

 "The Interstate Commerce Act, as amended by the [FAAAA], and the ICC Termination Act of 1995 . . . generally preempts state and local regulation 'related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.' " (*Columbus v. Ours Garage & Wrecker Serv., Inc.* (2002) 536 U.S. 424, 429 [153 L.Ed.2d 430, 122 S.Ct. 2226] *City of Columbus*].) Specifically, the FAAAA provides: "(1) General Rule.—Except as provided in paragraphs (2) and (3), a State [or] political subdivision of a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." (49 U.S.C. § 14501(c)(1).) The phrase "related to" in this general preemption provision is "interpreted quite broadly." (*Independent Towers, WA v. State, Washington* (9th Cir. 2003) 350 F.3d 925, 930 (*Independent Towers*).) Thus, " '[a] state or local regulation is related to the price, route, or service of a motor carrier if the regulation has more than an indirect, remote, or tenuous effect on the motor carrier's prices, routes, or services.' " (*Ibid.,*

quoting *Tocher v. City of Santa Ana* (9th Cir. 2000) 219 F.3d 1040, 1047, overruled in part on other grounds by *City of Columbus supra*, 536 U.S. 424 and by *Tillison v. City of San Diego* (9th Cir. 2005) 406 F.3d 1126, 1127.)

■ The FAAAA contains four express exceptions to the general preemption provision (49 U.S.C. § 14501(c)(2); *City of Columbus, supra,* 536 U.S. at p. 429), only two of which are raised by plaintiff here. The FAAAA provides that its general preemption rule "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." (49 U.S.C. § 14501(c)(2)(A); hereafter the safety exception.) It further provides that its general preemption rule "does not apply to the authority of a State . . . to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior written consent or authorization of the owner or operator of the motor vehicle." (49 U.S.C. § 14501(c)(2)(C); hereafter the nonconsensual towing exception.)

C. *Analysis*

■ Section 22658, subdivision (i) pertains to towing and storage fees. It provides in part: "(1) A charge for towing or storage, or both, of a vehicle under this section is excessive if the charge is greater than that which would have been charged for towing or storage, or both, made at the request of a law enforcement agency under an agreement between the law enforcement agency and a towing company in the city or county in which is located the private property from which the vehicle was, or was attempted to be, removed. [¶] (2) If a vehicle is released within 24 hours from the time the vehicle is brought into the storage facility, regardless of the calendar date, the storage charge shall be for only one day. Not more than one day's storage charge may be required for any vehicle released the same day that it is stored." Under section 22658's regulatory scheme, a person who charges excessive towing or storage charges is liable to the vehicle owner for four times the amount charged. (§ 22658, subd. (j).)

Plaintiff concedes that a towing company such as defendant is a "motor carrier of property" falling within 49 United States Code section 14501(c)'s ambit,[3] and it does not challenge the notion that section 22658 falls within the FAAAA's general preemption of state and local regulation of towing prices, routes, and services. Rather, it maintains the storage fee limitation of section 22658, subdivision (i)(2) falls within both the FAAAA's safety and nonconsensual

---

[3] A "motor carrier" is broadly defined as "a person providing motor vehicle transportation for compensation." (49 U.S.C. § 13102(12); see *Servantes, supra,* 86 Cal.App.4th at p. 1088.)

towing exceptions and thus the statute is entitled to be enforced according to its terms without FAAAA preemption.

As we explain, we reject plaintiff's contention that section 22658, subdivision (i)(2) falls within the safety exception, but agree it is saved from preemption under the nonconsensual towing exception.

### 1. *The Safety Exception (49 U.S.C. § 14501(c)(2)(A))*

In *Servantes*, *supra*, 86 Cal.App.4th 1081, the First Appellate District, Division Five of the Court of Appeal addressed the FAAAA's preemption over section 22658's regulatory scheme for removal of vehicles from private property by towing services and concluded certain regulations fell within the FAAAA's safety exception. (*Servantes*, at pp. 1092, 1095.) There, the defendant was found in the lower court to have committed hundreds of violations of state and local laws by his towing practices, including by imposing excessive towing and storage fees under section 22658, subdivision (i). (*Servantes*, at pp. 1083–1084.) The defendant's principal defense at trial and on appeal was that the regulations governing towing operations were preempted by federal law. (*Id.* at p. 1087.)

The Court of Appeal observed there was little question that a towing company qualifies as a "motor carrier" under the FAAAA, and, citing federal authorities in accord, that Congress's intention to preempt state and local regulation of towing services generally was evidenced by its limited exception for nonconsensual towing services, as it would otherwise have had no need to include such an exception. (*Servantes*, *supra*, 86 Cal.App.4th at p. 1088, citing *R. Mayer of Atlanta, Inc. v. City of Atlanta* (11th Cir. 1998) 158 F.3d 538, 543, revd. on other grounds in *City of Columbus supra*, 536 U.S. 424; *Ace Auto Body & Towing, Ltd. v. City of New York* (2d Cir. 1999) 171 F.3d 765, 771; *Hott v. City of San Jose* (N.D.Cal. 2000) 92 F.Supp.2d 996; *Harris Cty. Wrecker Owners v. City of Houston* (S.D.Tex. 1996) 943 F.Supp. 711, 720–724.)

However, relying in part on a decision by another division of its court, *Berry v. Hannigan* (1992) 7 Cal.App.4th 587 [9 Cal.Rptr.2d 213], *Servantes* found "the protections Vehicle Code section 22658 offers to the owner of a vehicle" had a public safety purpose and thus fell within the safety exception of the FAAAA. (*Servantes*, *supra*, 86 Cal.App.4th at pp. 1090, fn. 10, 1092.) In upholding the constitutionality of the provision requiring towing operators to accept credit cards (§ 22658, subd. (k)), *Berry* had reasoned: " ' "It cannot be doubted that the unexpected loss of the use of one's vehicle directly affects the safety and welfare of vehicle operators and owners. A person may be stranded hundreds of miles from home with no alternative mode of return

travel and with no place to stay until the vehicle can be recovered. . . . Legislation which tends to assist members of the public from involuntarily losing the use of their vehicles and which tends to expedite recovery of their vehicles once they have been removed fairly and clearly promotes the safety and welfare of the public." ' " (*Servantes*, at p. 1091, quoting *Berry, supra*, at p. 591.) The *Servantes* court adopted similar reasoning to apply the FAAAA's safety exception to its facts, pointing out that storage facilities for towed cars are unlikely to be located in densely populated, highly lighted locations, but rather in areas that "might be described as desolate, especially at night when so much of the retrieval of towed cars takes place." (*Servantes*, at p. 1091.) The court observed that the vehicle owner in that case had been stranded on a Saturday evening, spent 45 minutes trying to hail a taxi and then spent all of his money on the cab while waiting for the tow company representative, traveled to another location to make a pay phone call, and eventually had to be taken by the defendant to a teller machine to pay the $140 fee in cash. (*Id.* at pp. 1091–1092.)

In reaching its conclusion, the *Servantes* court disagreed with a decision of the Ninth Circuit Court of Appeals, *Tocher v. City of Santa Ana, supra,* 219 F.3d 1040 (*Tocher*), which held certain provisions of section 22658, including subdivisions (k) and (*l*) (pertaining to written authorization by the property owner to tow the vehicle) did not fall within the FAAAA's safety exception because they were " 'based on consumer protection rather than safety . . . '." (*Servantes, supra,* 86 Cal.App.4th at p. 1090, citing *Tocher,* at pp. 1044, 1052.) The *Servantes* court reasoned: "As noted, Vehicle Code section 22658 requires the owner of private property to notify the police before causing a vehicle to be towed and requires the towing company to obtain the written authorization of the property owner ([§ 22658,]subds. (a) & (*l*)); it also requires that the storage facility accept a credit card for payment of the towing and storage charges ([§ 22658, ]subd. (k)). In our view, this statute offers far more than economic protection to the consumer. By ensuring that removal occurs only upon proper authorization, the statute obviously serves to protect vehicle owners and the public at large from both towing mistakes and outright theft of vehicles from private property. And by the requirement that the tow operator accept credit cards, the statute expedites recovery of the involuntarily towed vehicle. Thus, we disagree with *Tocher* that Vehicle Code section 22658 is merely a consumer protection statute . . . ." (*Servantes,* at p. 1090.)

■ After *Servantes* was decided, the United States Supreme Court in *City of Columbus* addressed the FAAAA's safety exception on the question of whether it could save local regulations from preemption. (*City of Columbus supra,* 536 U.S. at pp. 428–429.) In holding that the exception did apply to municipalities, the court declined to accept a narrow construction of the federal statute. (*Id.* at p. 441.) It reiterated that the safety exception "shields

from preemption only 'safety regulatory authority.' " (*Id.* at p. 442.) Thus, "[l]ocal regulation of prices, routes, or services of tow trucks that is not genuinely responsive to safety concerns garners no exemption from [49 United States Code section] 14501(c)(1)'s preemption rule." (*City of Columbus*, at p. 442.) *City of Columbus* disapproved several circuit court of appeals decisions, including *Tocher*, *supra*, 219 F.3d at page 1051, which had held municipal safety and insurance regulations were not encompassed within the FAAAA's safety exception, and were therefore preempted. (See *City of Columbus*, *supra*, 536 U.S. at p. 431 [noting split among courts of appeals on the issue].)

The Ninth Circuit has since reconsidered *Tocher* and further abrogated that decision, at least as to subdivision (*l*) of section 22658, based in part on the high court's construction of the safety exception in *City of Columbus*. In *Tillison v. City of San Diego*, *supra*, 406 F.3d at p. 1131 (*Tillison*), the court concluded subdivision (*l*) of section 22658 was indeed safety related and thus not preempted by the FAAAA. *Tillison* noted the dearth of case law discussing the limits of the safety exception, but took guidance from *City of Columbus*'s focus on whether the Legislature's purpose and intent was truly to promote public safety. (*Tillison*, at p. 1129, citing *City of Columbus supra*, 536 U.S. at p. 442.) *Tillison* found an authoritative expression of the Legislature's intent in an August 2003 amendment to section 22658, in which the Legislature provided that in adopting subdivision (*l*) of section 22658, its intent was to "further the safety of the general public by ensuring that a private property owner or lessee has provided his or her authorization for the removal of a vehicle from his or her property, thereby promoting the safety of those persons involved in ordering the removal of the vehicle as well as those persons removing, towing, and storing the vehicle." (§ 22658, subd. (m)(2).) While not dispositive, the Legislature's express delineation of its safety purpose was relevant to the *Tillison* court's inquiry. (*Tillison*, *supra*, 406 F.3d at p. 1130.) The court also found helpful to its analysis *Servantes*, *supra*, 86 Cal.App.4th 1081, *Berry v. Hannigan*, *supra*, 7 Cal.App.4th 587, and other circuit court authority addressing the safety exception. (*Tillison*, at p. 1130, citing *Galactic Towing, Inc. v. City of Miami Beach* (11th Cir. 2003) 341 F.3d 1249, 1253; *Cole v. City of Dallas* (5th Cir. 2002) 314 F.3d 730; *Ace Auto Body & Towing, Ltd. v. City of New York*, *supra*, 171 F.3d 765; *Tow Operators v. City of Kansas City, Mo.* (8th Cir. 2003) 338 F.3d 873, 876.) The Ninth Circuit adopted the reasoning of the Florida district court in *Galactic Towing* involving a Miami Beach ordinance similar to subdivision (*l*) of section 22658; that court held the ordinance was safety related because " 'the ordinance protects both the vehicle owner and the public from towing mistakes, which may lead to dangerous confrontations, to the owner and his or her family being stranded at a dangerous time and location, to false vehicle

theft reports, which waste law enforcement's limited resources, to unnecessary hazardous tows and to similarly unsafe circumstances. The ordinance also protects against theft of vehicles from private property.' " (*Tillison, supra*, 406 F.3d at pp. 1130–1131.)

*City of Columbus* guides us in analyzing whether the Legislature intended section 22658 to serve or further a public safety purpose. Unlike the *Tillison* court, we are without an express statement of legislative intent as to whether section 22658, subdivision (i) was enacted to promote a public safety or welfare purpose. As *Tillison* noted, in 2003 the California Legislature amended section 22658 to evince its intent that subdivisions (k) and (*l*) were adopted to promote the safety and welfare of the general public. (§ 22658, subd. (m), added by Stats. 2003, ch. 212, § 1.)[4] The Legislature did not include subdivision (i) of section 22658 in that amendment. These provisions compel us to ask whether the Legislature, when it set forth an express statement of intent as to two subdivisions of section 22658, necessarily indicated that it had no such intent as to the remaining subdivisions. As we explain, we answer that question in the affirmative.

To ascertain legislative intent, we apply settled rules of statutory construction. We begin with the words of the statute, since ordinarily they provide the most reliable indication of legislative intent. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) "[I]f the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. [Citation.] In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." ' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57]; see also *Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

Here, the language of section 22658 is subject to the maxim *expressio unius est exclusio alterius*: "The expression of some things in a statute

---

[4] Section 22658, subdivision (m) provides: "(1) It is the intent of the Legislature in the adoption of subdivision (k) to assist vehicle owners or their agents by, among other things, allowing payment by credit cards for towing and storage services, thereby expediting the recovery of towed vehicles and concurrently promoting the safety and welfare of the public. [¶] (2) It is the intent of the Legislature in the adoption of subdivision (*l*) to further the safety of the general public by ensuring that a private property owner or lessee has provided his or her authorization for the removal of a vehicle from his or her property, thereby promoting the safety of those persons involved in ordering the removal of the vehicle as well as those persons removing, towing, and storing the vehicle."

necessarily means the exclusion of other things not expressed." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Stated another way, "[i]f a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others . . . . It is an elementary rule of construction that the expression of one excludes the other. And it is equally well settled that the court is without power to supply an omission." (*Estate of Pardue* (1937) 22 Cal.App.2d 178, 180–181 [70 P.2d 678].) This rule of statutory construction is applicable unless a contrary legislative intent is expressed in the statute or elsewhere. (*Fields v. Eu* (1976) 18 Cal.3d 322, 332 [134 Cal.Rptr. 367, 556 P.2d 729].)

Applying this maxim, we conclude that when the Legislature amended section 22658 to articulate its express intent to further public safety purposes by enacting subdivisions (*l*) and (k), but did not do so with respect to subdivision (i), it made an implicit legislative determination that the remaining provisions of section 22658, including the storage fee limitation in subdivision (i), were not enacted in response to public safety concerns. "Courts should generally 'assume that the Legislature knew what it was saying and meant what it said.' [Citation.] . . . And this is particularly true where the Legislature has omitted a provision which it has employed in other circumstances where the asserted effect is intended." (*Digital Biometrics, Inc. v. Anthony* (1993) 13 Cal.App.4th 1145, 1160–1161 [17 Cal.Rptr.2d 43].)

We find no contrary legislative intent elsewhere. Indeed, the legislative history of this amendment supports our conclusion. In adding subdivision (m) of section 22658, the Legislature considered the recommendations of a legislative advisory committee that had conducted a review of "all relevant laws affecting tow trucks" and advised the Legislature to insert a statement of intent only as to subdivisions (k) and (*l*) of section 22658.[5] (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 3 [analysis issued July 22, 2003].) "One of [the Tow Truck Advisory Committee's] recommendations included adopting a 'statement of legislative purpose' which would declare the safety purpose of current law requiring the acceptance of bank credit cards and written authorization prior to towing a vehicle." (Assem. Com. on Transportation, analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 2 [analysis issued Apr. 28, 2003].)

---

[5] This committee, the Tow Truck Advisory Committee, created by Senate Bill No. 46 (2001–2002 Reg. Sess.) and chaptered in Statutes 2001, chapter 127, was established in part to " 'review all relevant laws affecting tow trucks with a goal of improving tow truck safety' and 'develop proposed statewide tow truck industry standards, including, but not limited to, all of the following: (1) training; (2) criminal history disqualification; (3) appeal processes; and (4) minimum safe gross weight ratings for tow trucks.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 3 [analysis issued July 22, 2003].)

Noting the split between the *Tocher* and *Servantes* courts, the Tow Truck Advisory Committee had concluded "that a 'statement of legislative intent could establish guidelines and resolve the confusion created by conflicting court decisions.' " (Assem. Com. on Transportation, analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 2 [analysis issued Apr. 28, 2003].) According to the Assembly Committee on Transportation's report, the Legislature sought to "codify this statement of legislative intent by clarifying that both [subdivision (k) and (*l*) of section 22658] offer a safety benefit to the public and the towing industry." (Assem. Com. on Transportation, analysis of Assem. Bill No. 792 (2003–2004 Reg. Sess.), as introduced Feb. 20, 2003, p. 2 [analysis issued Apr. 28, 2003].)

The legislative history shows that in 2003, the Legislature had before it a review of all relevant towing regulations as well as a discussion of the need to protect the safety-related authority of the State of California from preemption by federal law, but when presented with the opportunity to clarify which provisions of section 22658 were designed to further a public safety purpose, it did not include subdivision (i) within that statement of intent. Under the circumstances, we cannot say the Legislature considered subdivision (i) of section 22658 "genuinely responsive to [public] safety concerns" (*City of Columbus, supra*, 536 U.S. at p. 442) so as to fall within the safety exception of the FAAAA.

Responding to our request for additional briefing on this issue, plaintiff and the Attorney General as amicus curiae maintain the Legislature in enacting subdivision (m) of section 22658 intended only to resolve the conflict between *Tocher* and *Servantes* as to subdivisions (k) and (*l*) of that statute, and it neither considered nor rejected the idea that subdivision (i)(2) was based on safety concerns. We have judicially noticed the above-referenced legislative committee analyses, and also grant the Attorney General's request for judicial notice of the Tow Truck Advisory Committee's 2002 Report to the Legislature (2002 Advisory Committee Report). (Evid. Code, §§ 452, subd. (c), 459.) We cannot agree that the Tow Truck Advisory Committee looked only to the regulatory provisions at issue in the conflicting court decisions. Its report recognized the general problem posed by *Tocher* and *Servantes* to the preservation of state safety regulatory authority, and as we have stated, Tow Truck Advisory Committee "reviewed all relevant laws and safety practices which affect tow truck industry safety" in conducting its task. (2002 Advisory Com. Rep., p. 1.)[6] Indeed, as the Attorney General

---

[6] In discussing the issue, the Tow Truck Advisory Committee acknowledged the breadth of the problem posed by the *Tocher* and *Servantes* decisions. It began by framing the broad question: "States and cities can regulate the price, route, or service of a motor carrier with respect to the transportation of property if, among other things, the regulation is within the safety regulatory authority of a state [citation]. Within California, two courts, one state and one

points out, the Tow Truck Advisory Committee recommended that an additional provision, section 22651.1, be included in the Legislature's statement of intent even though that section was not at issue in either *Tocher* or *Servantes*. (2002 Advisory Com. Rep., p. 24, fn. 4.) The Legislature declined to include that section in Assembly Bill No. 792. In our view, the advisory committee's recommendation to include section 22651.1, and the Legislature's rejection of that recommendation, bolsters our conclusion that the Legislature was aware of the general problem and knew it could have made a statement of intent to resolve the " 'Safety' vs. 'Consumer' " issue as to other tow truck regulations, but chose not to do so. Having reviewed the Tow Truck Advisory Committee's report, we cannot agree the Legislature's intent may be as narrowly construed as plaintiff and the Attorney General propose.

In reaching our conclusion, we disagree with *Servantes* to the extent it may suggest that all of section 22658's subdivisions fall within the ambit of the FAAAA's safety exception. (*Servantes, supra,* 86 Cal.App.4th at p. 1092 [finding a public safety purpose in the "protections . . . section 22658 offers to the owner of a vehicle"].) While *Servantes* mentioned subdivision (i) of section 22658 in its overview of the regulatory scheme (*Servantes,* at p. 1084), it did not explain whether or how that particular provision furthers a safety purpose. Further, *Servantes* was decided before the Legislature's addition of subdivision (m) of section 22658, which carved out subdivisions (k) and (*l*) in its statement of legislative intent. Like the Ninth Circuit did in *Tillison, supra,* 406 F.3d 1126, we find it appropriate to analyze each provision independently in our preemption analysis.

### 2. *The Nonconsensual Towing Exception (49 U.S.C. § 14501(c)(2)(C))*

 Although the storage fee regulation of section 22658, subdivision (i)(2) does not fall within the FAAAA's safety exception, we conclude it does fall within the nonconsensual towing exception of 49 United States Code section 14501(c)(2)(C). That exception, as stated, *ante,* permits the state to enact laws or regulations "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior written consent or authorization of the owner or operator of the motor vehicle." The term "transportation" is defined in the FAAAA as including

---

federal, have published conflicting decisions in cases in which they looked at certain state regulations in relation to the safety regulatory authority of the state." (2002 Advisory Com. Rep., p. 26.) After summarizing the conflicting court decisions, the Advisory Committee said: "The issue concerning exactly what sections were intended by the Legislature to be 'Safety['] vs. 'Consumer' related have not been definitively resolved and further reliance on the courts for decisions may cause further confusion. A statement of legislative intent would establish guidelines and resolve the confusion created by the aforementioned conflicting court decisions." (*Ibid.*)

"(A) a motor vehicle . . . or equipment of any kind related to the movement of passengers or property, or both . . . ; and [¶] (B) services related to that movement, including . . . *storage*, handling, packing, unpacking, and interchange of passengers and property." (49 U.S.C. § 13102(21) (A), (B), italics added; see also *Independent Towers, supra,* 350 F.3d at p. 931, fn. 4; *Ace Auto Body & Towing, Ltd. v. City of New York, supra,* 171 F.3d at p. 771.)

Relying on the Ninth Circuit's decision in *Independent Towers, supra,* 350 F.3d 925, as well as *Berry v. Hannigan, supra,* 7 Cal.App.4th 587, plaintiff argues the storage fee limitation of section 22658, subdivision (i) should easily be found to relate to the price of nonconsensual tows, because the obvious purpose of the entire regulatory scheme of section 22658 is to set out rules that apply when a property owner, as opposed to the vehicle owner, requests that a vehicle be towed. Plaintiff points to the fact the towing regulations at issue are contained within chapter 10 of division 11 of the Vehicle Code, pertaining to "Removal of Parked and Abandoned Vehicles," thus assertedly showing that all of the regulations are "devoted to regulating the methods and prices that apply to various situations which call for 'vehicle transportation by a tow truck . . . without the prior consent or authorization of the owner . . . .' " Plaintiff further maintains the trial court's ruling ignores the definition of "transportation" intended to apply to the FAAAA as including storage services.

 Viewing it in context of the entire scheme, we agree that section 22658, subdivision (i)(2) is a regulation relating to the price of tow truck "transportation," as that term is broadly defined in the FAAAA, performed without the vehicle owner's prior written consent or authorization. The statutory definition of the FAAAA explicitly broadens "transportation" to include storage related to the movement of property (49 U.S.C. § 13102(21)(B)), which has been held to encompass tow truck storage facilities. (*Ace Auto Body & Towing, Ltd. v. City of New York, supra,* 171 F.3d at p. 771.) Further, the regulatory scheme set out in section 22658 in general is plainly directed at regulating nonconsensual tows. It requires the person causing removal of the vehicle to provide notice in writing to the registered or legal owner of the vehicle of the "fact of the removal, the grounds for the removal, and . . . the place to which the vehicle has been removed." (§ 22658, subd. (b).) As the court in *Servantes* explained, the scheme set forth in section 22658 further requires the private property owner to notify the police before causing a vehicle to be towed and the towing company to obtain the written authorization of the property owner (§ 22658, subds. (a), (*l*)), and it obligates the storage facility to accept a credit card for payment of the towing and storage charges (§ 22658, subd. (k)), thus "expedit[ing] recovery of the involuntarily towed vehicle." (*Servantes, supra,* 86 Cal.App.4th at p. 1090; see also *Berry v. Hannigan, supra,* 7 Cal.App.4th at p. 591 [declining to distinguish towing services from other service providers because the towing

services "are not sought, or consented to, by the vehicle owner" and noting such owner "is in no position to decline the tower's services, or select another tower, or negotiate the manner or amount of payment"].) The regulations overall set out protections for vehicle owners who have had their vehicle moved without their consent or authorization. Like the court in *Independent Towers*, we have little doubt the storage fee regulation that is a part of this scheme relates to nonconsensual tows.

Defendant urges us to reject application of the nonconsensual towing exception on two grounds. His first—that the towing in this case in fact occurred at plaintiff's direction and is therefore not nonconsensual—fails on the ground that such facts are not pleaded. Defendant's motion challenges the pleadings only, and our review disregards facts extrinsic to his pleadings. (Code Civ. Proc., § 437.) Nor are such facts or assertions by themselves judicially noticeable. (Evid. Code, §§ 451, subd. (f) [facts must be of "generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute"], 452, subds. (g), (h) [facts and propositions must be of such "common knowledge" that they "cannot reasonably be the subject of dispute," or are not subject to dispute and are "capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"].)

 Defendant's second contention—that the storage charge does not constitute a service connected to the transportation of vehicles because it is "imposed after the transportation has concluded"—is likewise without merit. We decline to limit the reference to "storage" in 49 United States Code section 13102(21)(B)'s definition of transportation to storage while a vehicle is in transit upon a tow truck. The Legislature's definition of transportation is broad and open-ended—providing for "services related to [the] movement" of property—and in our view, storage of a towed vehicle at a storage yard after its transport is a service incident or related to the carriage. (Accord, *PNH Corp. v. Hullquist Corp.* (1st Cir. 1988) 843 F.2d 586, 590 [holding a defendant that had stored goods bound for delivery but never actually transported those goods would have provided "transportation" within the meaning of 49 United States Code section 13102 if it had been a motor carrier; court stated the broad definition of transportation in the statute includes all "services incident to carriage and delivery"].)

Having concluded that California's storage fee regulation of section 22658, subdivision (i)(2) is expressly excepted from the general preemption provision of the FAAAA under the nonconsensual towing exception, we reverse the judgment.

## DISPOSITION

The judgment is reversed and the matter remanded with directions that the court enter a new order denying defendant's motion to strike. Plaintiff shall recover its costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.