671 S.E.2d 673

**WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD,**
Petitioner Below, Appellee,

v.

**Jerry Allen WEAVER, A Retiree of the West Virginia Public Employees Retirement System, Respondent Below, Appellant.**

No. 33864.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2008.

Decided Oct. 10, 2008.

Leah Perry Macia, Stephanie L. Ojeda, Eric E. Kinder, Randal M. Whitlatch, Spilman Thomas & Battle, PLLC, Charleston, for Appellant.

J. Jeaneen Legato, West Virginia Consolidated Public Retirement Board, Charleston, for Appellee.

DAVIS, Justice.[1]

The appellant herein and respondent below, Jerry Allen Weaver (hereinafter "Mr. Weaver"), appeals from an order entered July 23, 2007, by the Circuit Court of Kanawha County. By that order, the circuit court determined that Mr. Weaver, who is a retiree of the West Virginia Public Employees Retirement System (hereinafter "PERS"), had forfeited his right to receive benefits therefrom because he had rendered "less than honorable service" in violation of W. Va.Code § 5–10A–1 (1976) (Repl.Vol.2006) and W. Va. Code § 5–10A–2(e)(2) (2005) (Repl.Vol.2006).

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

Specifically, the circuit court determined that because Mr. Weaver, who, prior to his retirement, had served as the elected Assessor of Lincoln County from 1980 until 2006, had been convicted of the felony of conspiracy to buy votes pursuant to 18 U.S.C. § 371 (1994) (Repl.Vol.2008), such crime constituted a "[c]onviction of a participant of a felony for conduct related to his ... office ... which he ... committed while holding the office" in violation of W. Va.Code § 5–10A–2(e)(2). On appeal to this Court, Mr. Weaver contends that the circuit court erred by concluding that his conviction of conspiracy to buy votes was related to his office as Assessor insofar as he claims that he did not benefit directly from such conspiracy. Upon a review of the parties' arguments, the pertinent authorities, and the record designated for appellate review, we affirm the ruling of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts underlying the instant appeal are largely undisputed by the parties. Mr. Weaver served as the elected Assessor of Lincoln County from 1980 until he resigned from that office on December 30, 2005.[2] When Mr. Weaver retired on January 1, 2006, he had twenty-seven years and six months of credited service with PERS. At the time that the circuit court entered its aforementioned order, Mr. Weaver had been receiving PERS pension benefits of approximately $2,020.79 per month since the date of his retirement.

2. Mr. Weaver repeatedly won reelection to the office of Assessor and was, at times, unopposed in such contests.

3. Each of the affected elections involved the election of a candidate to serve as a Representative of the State of West Virginia in the United States House of Representatives, and certain of those elections additionally involved the election of the President and Vice–President of the United States. The crime involved in this case, "[c]onspiracy to commit offense or to defraud United States," is defined as follows:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and

On August 2, 2005, the United States Attorney's Office charged Mr. Weaver with a single count of participating in a conspiracy to buy votes in violation of 18 U.S.C. § 371 (1994) (Repl.Vol.2008).[3] The indictment alleged that Mr. Weaver had participated in the alleged vote-buying conspiracy and committed acts in furtherance thereof from 1990 until 2004; during this same period of time, Mr. Weaver was the elected Assessor of Lincoln County and was a contributing member of PERS. Thereafter, on December 27, 2005, Mr. Weaver entered a plea of guilty. On West Virginia Primary Election Day 2006, i.e. May 9, 2006, the United States District Court for the Southern District of West Virginia sentenced Mr. Weaver to twelve months' imprisonment and fined him $2,000.

During the guilty plea hearing, Mr. Weaver testified that his only role in the alleged conspiracy was as a conduit of monies from one third-party to another third-party. Mr. Weaver claims that he did not directly benefit from the alleged conspiracy insofar as none of the monies were used to buy votes to win his reelection and that he did not use his office in furtherance of the alleged conspiracy insofar as he did not reduce tax assessments or engage in other improper behavior in an attempt to buy votes or to defeat the opponents of the slated candidates. Subsequently, during the sentencing hearing, the district court found that "the defendant [Mr. Weaver] did not abuse his position as assessor of Lincoln County in that he has not shown to have abused that position to facilitate the commission of the conspiracy offense to which he has pled guilty."[4] The court

one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 371 (1994) (Repl.Vol.2008).

4. The United States Attorney had attempted to prove that Mr. Weaver had, in fact, abused his position as Assessor of Lincoln County in order to enhance Mr. Weaver's punishment. See U.S. Sentencing Guidelines Manual § 3B1.3 (2005) (Main Vol.2007) (permitting increase in sentence

also described Mr. Weaver's involvement in the alleged conspiracy as "a conduit of funds destined for vote buying."

Subsequent to these criminal proceedings, the appellee herein and petitioner below, the West Virginia Consolidated Public Retirement Board (hereinafter "the Board"), by written notice dated September 18, 2006, informed Mr. Weaver that it believed his felony conviction indicated that he had rendered "less than honorable service" and that, as a result thereof, he was no longer eligible to receive pension benefits from PERS. Mr. Weaver then requested the Board to seek a judicial determination as to whether he had rendered "less than honorable service." As a result, the Board filed a petition in the Circuit Court of Kanawha County on November 6, 2006, seeking to terminate Mr. Weaver's retirement benefits. Following responsive pleadings and a hearing on the matter, the circuit court, by order entered July 23, 2007, determined that Mr. Weaver had forfeited his right to receive his PERS retirement benefits. In so ruling, the circuit court observed that " 'public service, compensated at public expense, is a public trust and necessarily implies faithful service.... Simply put, public pensions, unlike private-sector pensions, are premised in part upon faithful service of the public trust; therefore, a˙breach of that trust leads to a forfeiture of a public pension.' " Quoting West Virginia Pub. Employees Ret. Sys. v. Dodd, 183 W.Va. 544, 549 & 553, 396 S.E.2d 725, 730 & 734 (1990) (additional citation omitted), overruled on other grounds by Booth v. Sims, 193 W.Va. 323, 456 S.E.2d 167 (1995). Thus, the circuit court concluded,

> [a] fundamental breach of the public trust occurred when an elected official, Respondent [Mr. Weaver], feloniously engaged in a *conspiracy to buy votes* during elections in which he was a candidate[.]
>
> Respondent's felony conviction is related to his elected position. Respondent became a member of the West Virginia Public Employees Retirement System (PERS) by virtue of holding an elected office and remained a member by repeatedly winning elections. He was convicted of corrupting many of the elections which triggered his eligibility and allowed for his continued participation in the public funded pension system (PERS)[.]
>
> Pursuant to West Virginia Code § 5–10A–1, et seq., the Respondent, Jerry Allen Weaver, has rendered *less than honorable service* and as a consequence is legally ineligible to receive any benefits as a retirant of the Public Employees Retirement System[.]

(Emphasis in original). Finally, the court ordered that Mr. Weaver's "membership in the Public Employees Retirement System be terminated pursuant to West Virginia Code § 5–10A–1, et seq., and that his past employee contributions together with statutory interest be refunded to him minus any benefits he has previously received."[5] From this ruling of the circuit court, Mr. Weaver appeals to this Court.

## II.

### STANDARD OF REVIEW

On appeal to this Court, Mr. Weaver assigns error to the circuit court's interpretation of the statutory provisions governing his eligibility to receive pension benefits from PERS. This Court has jurisdiction to hear this case in its present posture pursuant to W. Va.Code § 5–10A–4 (1976) (Repl.Vol. 2006),[6] which directs that "[a] determination of the circuit court [regarding eligibility for

"[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense").

**5.** Following the circuit court's ruling, Mr. Weaver moved for a stay of the circuit court's order, which relief the circuit court denied by order entered August 15, 2007. The Board then issued a check to Mr. Weaver, on August 22, 2007, in the amount of $24,844.29, which amount was

described by the Board as "reflecting [Mr. Weaver's] remaining employee contributions plus interest minus the benefits he had previously received."

**6.** Although this provision has been amended since the occurrence of the events giving rise to the instant appeal, the operative language relied upon herein remains the same. *Compare* W. Va.Code § 5–10A–4 (1976) (Repl.Vol.2006) *with* W. Va.Code § 5–10A–4(c) (2008) (Supp.2008).

public pension benefits] shall be a final order which may be appealed to the Supreme Court of Appeals in the same manner as decisions in other civil actions." Insofar as the merits of the present appeal involve a matter of statutory interpretation, we review the circuit court's ruling *de novo:* "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Mindful of this standard, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

The sole issue for consideration by this Court in this matter is whether Mr. Weaver's felony conviction for conspiracy to buy votes amounted to "less than honorable service" so as to preclude him from receiving pension benefits from PERS. In other words, we must determine whether Mr. Weaver's conviction for conspiracy to buy votes constitutes a "[c]onviction of a participant of a felony for conduct related to his ... office or employment which he ... committed while holding the office or during the employment" within the contemplation of the definition of "less than honorable service" set forth in W. Va. Code § 5–10A–2(e)(2). We conclude that it does.

The criteria for disqualification for pension benefits administered by PERS are set forth in W. Va.Code § 5–10A–1, *et seq.* Specifically, a retirant's eligibility to receive PERS pension benefits is conditioned upon his/her having rendered "honorable" service:

The Legislature finds and declares that every retirement plan instituted and created under the laws of this state has from the inception thereof contemplated and each now contemplates that the service rendered by any participating public offi-

cer or employee shall at all times be honorable. The Legislature further finds and declares that honorable service is a condition to receiving any pension, annuity, disability payment or any other benefit under a retirement plan.

W. Va.Code § 5–10A–1 (1976) (Repl.Vol. 2006). We previously have examined this statutory language and have held that "[a]t common law, as under *W. Va.Code,* 5–10A–1 to 5–10A–10 [1976], a public officer's or public employee's service must be honorable at all times, and if not, there is a total forfeiture of the public pension." Syl. pt. 1, *West Virginia Pub. Employees Ret. Sys. v. Dodd,* 183 W.Va. 544, 396 S.E.2d 725 (1990), *overruled on other grounds by Booth v. Sims,* 193 W.Va. 323, 456 S.E.2d 167 (1995). In a later opinion, we clarified our earlier holding in *Dodd,* explaining that

[i]f an employee engages in misconduct during his or her public service, he or she may forfeit rights to collect a pension later. Insofar as *West Virginia Public Employees Retirement System v. Dodd,* 183 W.Va. 544, 396 S.E.2d 725 (1990) holds that an employee's misconduct results in a forfeiture of the entire pension, it is still good law because the requirement of honorable service has been established in advance and has been made an explicit part of the entire bargain.

Syl. pt. 9, in part, *Booth v. Sims,* 193 W.Va. 323, 456 S.E.2d 167 (1995).

The parties to the instant proceeding do not dispute that "honorable service" is a prerequisite to a retirant's receipt of PERS pension benefits, and the circuit court likewise concluded that Mr. Weaver was required to have rendered "honorable service" in order to be eligible to receive his PERS retirement. Rather, the parties disagree as to what conduct constitutes "less than honorable service" such as would result in the loss of eligibility or the forfeiture of Mr. Weaver's status as a participant in PERS.

To determine whether Mr. Weaver's misconduct constitutes "less than honorable service," it is necessary to look to the statutory definition of this term. Pursuant to W. Va.

Code § 5–10A–2(e)(2) (2005) (Repl.Vol.2006),[7] " '[l]ess than honorable service' means .... (2) Conviction of a participant of a felony for conduct related to his or her office or employment which he or she committed while holding the office or during the employment[.]" Interpreting this statute, the circuit court ruled that Mr. Weaver's felony conviction for conspiracy to buy votes, which nefarious conduct occurred over a period of fourteen years during which time Mr. Weaver also was holding office as the Assessor of Lincoln County and which conspiracy tainted the very same elections by which Mr. Weaver was elected Assessor and obtained his status as a participant in PERS, satisfied the definition of "less than honorable service" so as to result in his ineligibility to receive PERS pension benefits because Mr. Weaver's felonious conduct was "related to" his office and was committed while he held said office. The Board agrees with the circuit court's interpretation and application of this statutory language, echoing the circuit court's concerns that the felonious corruption of elections by an elected official, which tampering occurred while the official was serving in his/her elected office, is "related to" the official's office so as to constitute "less than honorable service." However, Mr. Weaver disputes this interpretation of the relevant statutory language and instead claims that because there was no direct relationship between his actions and his office, and no evidence that he conspired to buy votes to benefit his own reelections, there is an insufficient nexus upon which to determine that his felony conviction was "related to" his office.

The statutory definition of "less than honorable service" requires a participant to (1) have been convicted of a felony; (2) for conduct "related to" his/her office or employment; and (3) which felonious conduct was committed while the participant was holding said office or during his/her employment. W. Va.Code § 5–10A–2(e)(2). Although the parties are in general agreement as to the meaning and application of this statutory language, they disagree about the precise meaning to be accorded to the term "related to." Because "related to" is not further defined by the Legislature, we must ascertain its intended meaning.

When determining the meaning of a statute, we resort to the rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). We next consider the precise words chosen by the Legislature in drafting the statute in question. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951). *Accord* Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). *But see, e.g.,* Syl. pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied."); Syl. pt. 1, *Ohio County Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

---

7. Since the time of the events at issue in these proceedings, the Legislature has amended W. Va.Code § 5–10A–2(e)(2). *See* W. Va.Code § 5–10A–2(f)(2) (2008) (Supp.2008). *See also* W. Va. Code § 5–10A–2(e)(2) (2007) (Supp.2007). Although the most recent statutory amendments expanded the scope of the definition of "less than honorable service" to include "former participant[s]" who have been convicted of the referenced felony, these amendments do not affect the outcome of these proceedings because all parties agree that Mr. Weaver's pension eligibility is governed by this definitional section as it pertains to "participant[s]." *See* W. Va.Code § 5–10A–2(f) (1976) (Repl.Vol.2006) (defining " '[p]articipant' " as "any person eligible for or receiving any benefit under a retirement plan on account of his or her service as an officer or employee for a public employer"). *See also* W. Va.Code § 5–10A–2(g) (2008) (Supp.2008) (same); W. Va.Code § 5–10A–2(f) (2007) (Supp. 2007) (same).

■ If the Legislature has failed to provide a definition for a particular word or term it has employed in a statute, meaning can be ascribed to such statutory language by referring to the common, ordinary, accepted meaning of the undefined terminology. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982). More succinctly, "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353. *Accord* Syl. pt. 6, in part, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning.").

■ The term left undefined by the Legislature in W. Va.Code § 5–10A–2(e)(2)'s definition of "less than honorable service" is "related to." The word "related" is variously defined as "associated; connected" [8] and as "[h]aving mutual relation [9] or conne[ct]ion." [10] Other jurisdictions that have examined this phrase likewise have construed "related to" as meaning "connected to [or] associated with"; [11] "connected, associated, bearing on, pertaining to, or involving"; [12] and "to stand in some relation; to have bearing or concern;

to pertain; refer; to bring into association with or connection with." [13] *Cf. CPF Agency Corp. v. R & S Towing Serv.,* 34 Cal. Rptr.3d 106, 111, 132 Cal.App.4th 1014, 1022 (2005) (interpreting "related to," as used in Interstate Commerce Act, as requiring "more than an indirect, remote, or tenuous effect" (internal quotations and citations omitted)). Thus, it is apparent from the above-quoted authorities that the common, ordinary, and accepted meaning of the term "related to" is "connected to or associated with." Accordingly, we hold that, within the definition of "less than honorable service" set forth in W. Va.Code § 5–10A–2(e)(2) (2005) (Repl.Vol.2006), the term "related to" requires the referenced felony conviction to be connected to or associated with the participant's office or employment.

■ Turning now to the facts before us, we must determine whether Mr. Weaver's felony conviction for conspiracy to buy votes, which conduct occurred while he was holding the office of Assessor of Lincoln County, was related to his office so as to render him ineligible to receive PERS pension benefits. In other words, was Mr. Weaver's felonious conduct connected to or associated with his office? Mr. Weaver was convicted for the felony crime of conspiracy to buy votes. This crime is inextricably connected to and associated with Mr. Weaver's office insofar as his office as Assessor is an elected office and the felony crime for which he was convicted involves tainting the very same electoral process that led not only to his obtaining his office as Assessor but which also rendered him eligible to participate in PERS as an elected official. *See* W. Va.Code § 5–10–2(11) (2005) (Repl.Vol.2006) (defining

**8.** Random House Webster's Unabridged Dictionary 1626 (2d ed.1998).

**9.** The term "relation" is further defined as "[t]hat feature or attribute of things which is involved in considering them in comparison or contrast with each other; the particular way in which one thing is thought of in conne[ct]ion with another; any conne[ct]ion, correspondence, or association, which can be conceived as naturally existing between things." XIII The Oxford English Dictionary 550 (2d ed.1991 reprint).

**10.** XIII The Oxford English Dictionary 549 (2d ed.1991 reprint) (footnote added).

**11.** *Coregis Ins. Co. v. American Health Found., Inc.,* 241 F.3d 123, 129 (2d Cir.2001) (internal quotations omitted). *Accord In re Weinstein,* 173 B.R. 258, 276 (Bankr.E.D.N.Y.1994).

**12.** *Magill v. Louisiana State Police Troop G,* 714 So.2d 139, 141 (La.Ct.App.1998).

**13.** *Deerskin Trading Post, Inc. v. United Parcel Serv. of America, Inc.,* 972 F.Supp. 665, 668 (N.D.Ga.1997) (internal quotations and citations omitted).

"[e]mployee" covered by West Virginia Public Employees Retirement Act as including "an officer ... [of] any political subdivision"). The vote-buying conspiracy in which Mr. Weaver allegedly participated corrupted eight different elections between 1990 and 2004. In four of those elections, Mr. Weaver was a candidate for the office of Assessor and won reelection. To the extent the activities of the alleged vote-buying conspiracy tainted those elections, in any way, shape, or form, Mr. Weaver's participation therein unquestionably was related to his reelection as Lincoln County Assessor, and, thus, his felonious conviction was related to his office. Accordingly, we affirm the circuit court's ruling finding that Mr. Weaver has forfeited his PERS pension benefits because he rendered less than honorable service as the Assessor of Lincoln County.

■ Moreover, it goes without saying that, in the more than twenty-five years that Mr. Weaver served as the elected Assessor of Lincoln County, he became intimately familiar with and gained extensive knowledge of the political structure of Lincoln County. Whether Mr. Weaver directly benefitted from his participation in the alleged conspiracy does not matter. The relevant inquiry is whether his conviction thereof "related to" his public office. With the numerous years of experience Mr. Weaver had as the elected Assessor of Lincoln County, it is unfathomable that he could completely separate himself from and entirely ignore the information as to the inner workings of Lincoln County politics he had gained in this capacity while he pursued his criminal activity. Though Mr. Weaver claims that he acted as a private citizen when he participated in the vote-buying conspiracy, it is an unfortunate coincidence of timing that his criminal activity coincided with his time in office. Public officers are held to a high standard of public trust, and if they have been found to have violated the public trust, they risk the resultant forfeiture of their publicly-funded pension benefits. *See* Syl. pt. 9, in part, *Booth v. Sims*, 193 W.Va. 323, 456 S.E.2d 167; Syl. pt. 1, *Dodd*, 183 W.Va. 544, 396 S.E.2d 725.

■ Finally, Mr. Weaver argues that because the federal district court did not find a sufficient connection between his participation in the vote-buying conspiracy and his elected office upon which to enhance his sentence, the circuit court erred by finding that his conduct was related to his office. Although Mr. Weaver makes a valiant effort to save his pension benefits, his argument on this point is flawed because the federal sentencing guidelines that guided the district court's decision require a stronger showing of relationship between the criminal conduct and the elected office than does the statutory language at issue herein. Pursuant to § 3B1.3 of the United States Sentencing Guidelines, a defendant's sentence may be enhanced "[i]f the defendant *abused* a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." U.S. Sentencing Guidelines Manual § 3B1.3 (2005) (Main Vol.2007) (emphasis added). Thus, to warrant an increased sentence, the defendant's conduct must have been not only *related to, connected to, or associated with* his/her public office, but such conduct must also have constituted an "*abuse* [ ]" thereof. *Id.* (emphasis added). By contrast, the statute governing a retirant's eligibility to receive PERS pension benefits requires a much less substantial relationship between the retirant's criminal conduct and his/her public office, requiring only that such conduct be "*related to*" his/her public office. W. Va.Code § 5–10A–2(e)(2) (emphasis added). In light of the distinctions made by these two different guidelines, our decision herein is not inconsistent with the findings made by the federal district court. As we explained previously, we find that Mr. Weaver's conviction for conspiracy to buy votes is related to his office as Assessor and that the circuit court correctly determined that such felonious conduct, which is related to Mr. Weaver's office and was committed while he held the same, constituted "less than honorable service" so as to render Mr. Weaver ineligible to receive pension benefits from PERS.

## IV.

## CONCLUSION

For the foregoing reasons, the July 23, 2007, order of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.