455 S.E.2d 817

**Daniel G. BECKLEY, Robert L. Clay, Thomas S. Cueto, and Charles W. Rumbaugh, Appellants,**

v.

**Colonel T.L. KIRK, Superintendent, West Virginia Division of Public Safety; Darrell V. McGraw, West Virginia Attorney General; and Andrew N. Richardson, Commissioner, West Virginia Workers' Compensation Fund, Appellees.**

**Danny G. BECKLEY, Appellant,**

v.

**WORKERS' COMPENSATION COMMISSIONER and the West Virginia Division of Public Safety, Appellees.**

Nos. 22242, 22471.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 1995.

Decided March 2, 1995.

259

Terry M. Jordan, Robinson & Rice, L.C., Huntington, for appellants.

Darrell V. McGraw, Jr., Atty. Gen., K. Keian Weld, Asst. Atty. Gen., Charleston, for appellee Andrew N. Richardson.

Darrell V. McGraw, Jr., Atty. Gen., Bradford W. Deel, Asst. Atty. Gen., Charleston, for appellee Colonel T.L. Kirk and appellees in No. 22471.

NEELY, Chief Justice:

Daniel G. Beckley, Robert L. Clay, Thomas S. Cueto and Charles W. Rumbaugh were each injured in the line of duty as state troopers employed by the West Virginia Division of Public Safety (hereinafter "DPS"). Only Trooper Beckley timely filed a Workers' Compensation claim. On 2 March 1993,

appellants Clay, Cueto and Rumbaugh sought a writ of mandamus in the Circuit Court of Kanawha County to compel the DPS to subscribe to the Workers' Compensation Fund (hereinafter "WC Fund") or to become a true self-insurer under *W.Va.Code* 23–2–9 [1991] and to compel the WC Fund to process the claims of uniformed DPS employees (hereinafter "state troopers"). On 13 October 1993 the Circuit Court entered an order denying the Writ and dismissing the case. On 29 July 1994, the Workers' Compensation Appeal Board denied Mr. Beckley's claim. Both the Order of the Circuit Court and the Order of the Workers' Compensation Appeal Board were appealed to this Court. The two cases were consolidated and we decide them both now.

State troopers have traditionally received compensation for work-related injuries through the Death, Disability and Retirement Fund (hereinafter "DDR Fund"), a special plan designed specifically for state troopers. The issue before this Court is whether state troopers are *also* covered under the West Virginia Workers' Compensation Act.

The West Virginia Workers' Compensation Act defines those who must subscribe to the Fund as follows:

The state of West Virginia and all governmental agencies or departments created by it, including county boards of education, political subdivisions of the state, any volunteer fire department or company and other emergency service organizations . . . regularly employing another person or persons for the purpose of carrying on any form of industry, service or business in this state, are employers within the meaning of this chapter and are hereby required to subscribe to and pay premiums into the workers' compensation fund for the protection of their employees and shall be subject to all requirements of this chapter and all rules and regulations prescribed by the commissioner. . . .

*W.Va.Code* 23–2–1(a) [1991]. On its face this statute appears to include the Division of Public Safety; however, proper treatment of this issue requires a brief historical review and comparison of the Workers' Compensation Fund and the Death, Disability and Retirement Fund.

The West Virginia Workmen's Compensation Fund,[1] adopted in 1913, was amended in 1919 to allow all governmental agencies to participate. 1919 *Acts of the Legislature, Regular Session,* c. 131, § 9. The Department of Public Safety,[2] however, was either excluded by legislative intent or declined to participate. In 1922 the Superintendent of State Police, in his report to the Governor, complained that there was no pension provision or any other fund to provide troopers disabled in the line of duty a living allowance. Jackson Arnold, *Report to the Governor,* 8 (30 June 1922).

In 1923, apparently in response to the 1922 report, the Legislature authorized the Superintendent to compensate injured troopers from the DPS operating budget. 1923 *Acts of the Legislature, Regular Session,* c. 147, § 58. The 1924 report of the Superintendent complained that the funds budgeted by the 1923 Legislature would soon expire, again leaving disabled members without benefits. Jackson Arnold, *Biennial Report of the West Virginia State Police,* 12 (1924). In 1925, the Legislature created the Death and Disability Fund.[3] 1925 *Acts of the Legislature, Regular Session,* c. 4, §§ 1, 2, 3. The purpose of the Death and Disability Fund was, and is, to provide compensation to injured state troopers.

The DPS Superintendent once again complained to the Governor in his 1928 report. This time the Superintendent expressly stated that state troopers did not receive the protection of the Workers' Compensation Fund and requested legislation to place members under such protection (although troopers would have been *much* less generously compensated under Workers' Compen-

---

1. At this time the Fund had not yet been given the gender neutral title of "Workers' Compensation Fund."

2. This name was later changed to "Division of Public Safety."

3. In 1935 the Legislature amended the statute to create the Death, Disability, and Retirement Fund. 1935 *Acts of the Legislature, Regular Session,* c. 28.

sation than under their own system, the Death and Disability Fund.[4]), R.E. O'Connor, *Fifth Biennial Report of the Department of Public Safety,* 16 (1928). Subscription to the WC Fund became mandatory for state agencies in 1937, yet no effort was made to compel subscription by the DPS. 1937 *Acts of the Legislature, Regular Session,* c. 104, § 1. Moreover, the Legislature has never appropriated funds for the DPS to pay Workers' Compensation premiums.

▮ As we stated in syllabus point one of *Transamerica Com. Fin. v. Blueville Bank,* 190 W.Va. 474, 438 S.E.2d 817, 823 (1993), " 'Statutes in pari materia, must be construed together and the legislative intention, as gathered from the whole of the enactments, must be given effect.' Point 3., Syllabus, *State ex rel. Graney v. Sims,* 144 W.Va. 72 [105 S.E.2d 886 (1958)]. Syl. pt. 1, *State ex rel. Slatton v. Boles,* 147 W.Va. 674, 130 S.E.2d 192 (1963)." When viewing the history of the Death, Disability and Retirement Fund in conjunction with the history of the Workers' Compensation Fund, it becomes clear that the Legislature intended the DDR Fund to be a comprehensive system of compensation and *never* intended for state troopers to be covered under the Workers' Compensation Fund.

▮ If state troopers had been covered under the WC Fund it would not have been necessary to create the DDR. The reports of the DPS superintendents reinforce this conclusion. Obviously, if the WC Fund covered state troopers, the superintendents would not have complained of the lack of coverage for disabled troopers or specifically have requested coverage under the WC Fund years ago before the contours of the two systems were firmly established. That state troopers are not covered by the WC Fund is also the opinion of the administrators of the WC Fund, who have repeatedly declined to process the claims of state troopers, and the opinion of the West Virginia State Police Academy, which informs trainees that the WC Fund does not apply to state troopers. This Court has held that " '[w]here a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous.' Syllabus point 7., *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975)." Syl. pt. 8, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361, 367 (1975).

Benefits under the DDR Fund are superior to the WC Fund. State troopers on work-related disability leave receive their full salary, as opposed to workers on temporary total disability under the WC Fund, who receive only 100% of the *state average weekly wage.* Troopers on disability leave also earn all annual and sick leave, and are not charged for sick leave. Although the WC Fund covers only work-related injuries, the DDR Fund covers in addition non-work-related injuries. Furthermore, a partially disabled trooper[5] receives two-thirds of his or her previous twelve months' wages until he or she reaches age 50, whereupon he or she will receive retirement benefits. *W.Va. Code* 15–2–29 [1994]. Under the WC Fund a permanent partial disability rating results in a payment of four weeks' compensation for each percent of disability, not to exceed two-thirds of the *state average weekly wage.* Because of the physical demands of police work, a relatively minor injury that would result in a very low permanent partial disability award under Workers' Compensation may be grounds for "partial disability" under the DDR. A trooper with a "partial disability" rating receives two-thirds of his or her previous twelve months' wages until reaching age 50, even though he or she is fully capable of gainful employment in a field other than police work.

We do recognize, however, that for some minor injuries the WC Fund provides benefits where the DDR does not. For example,

4. The superintendent requested legislation to place state troopers under the protection of the Workers' Compensation Fund because the Death and Disability fund was not increasing fast enough to produce sufficient income to meet escalating demands.

5. A partially disabled trooper is one who can no longer perform police duties, but is still able to engage in gainful employment.

a trooper who sustains a minor permanent injury that does not prevent him from performing his police duties, such as losing the tip of a finger on his non-dominant hand, would receive permanent partial disability benefits in addition to medical benefits under the WC Fund. However, for the same injury, a trooper would receive only medical benefits under the DDR Fund because he or she would be able to return to his or her full duties. Notwithstanding the treatment of minor injuries to which I have just alluded, the DDR is nonetheless far superior in any overall sense.

Likewise, total disability[6] benefits are superior under the DDR Fund. The WC Fund pays only two-thirds of the state average weekly wage for the life of a permanently and totally disabled worker, while the DDR Fund pays full salary for the life of a totally disabled trooper.

 Thus, it should hardly come as a surprise that allowing troopers coverage under both systems would frequently result in a trooper's receiving benefits in an amount that exceeds his or her salary. " 'Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made.' Syl. pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938)." Syl. pt. 3, *State v. Kerns*, 183 W.Va. 130, 394 S.E.2d 532, 537 (1990). An absurd result would surely proceed from an interpretation of *W.Va.Code* 23–2–1(a) [1991] that the Legislature intended state troopers to be covered under the WC Fund as well as the DDR Fund.

Accordingly, the judgments of the Circuit Court of Kanawha County and the Workers' Compensation Appeal Board are affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

---

**6.** A state trooper is totally disabled under the DDR Fund when he or she is incapacitated ever to engage in *any* gainful employment. *W.Va. Code* 15–2–29 [1994].