672 S.E.2d 389

**David HAWKINS and Kim Hawkins, and Tyler Hawkins, Ashley Hawkins and Chase Hawkins, Minors, by and through their next friend, David Hawkins, Plaintiffs Below, Appellants**

v.

**The WEST VIRGINIA DEPARTMENT OF PUBLIC SAFETY a/k/a the West Virginia State Police, the Commission on Drunk Driving Prevention, and J. Mattman Security, Inc., Defendants Below, Appellees.**

No. 33876.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2008.

Decided Dec. 12, 2008.

G. Thomas Smith, Esq., Smith, McMunn & Glover, Clarksburg, for Appellants.

Gary E. Pullin, Esq., Wendy E. Greve, Esq., Pullin, Fowler & Flanagan, Charleston, David M. Adkins, for Appellees.

PER CURIAM:[1]

In this appeal from the circuit court of Kanawha County, we are asked to consider whether the West Virginia State Police [2] has immunity from negligence-based lawsuits by its uniformed members for injuries sustained

---

1. Pursuant to an administrative order entered on September 11.2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008 and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. The "West Virginia State Police" has, in the past, been known as the "Department of Public Safety" and the "Division of Public Safety." *See* *W.Va.Code*, 15–2–2 [2006]. The uniformed members of the State Police—generally referred to as "troopers"—"have the mission of statewide enforcement of criminal and traffic laws with emphasis on providing basic enforcement and citizen protection from criminal depredation throughout the state and maintaining the safety of the state's public streets, roads and highways." *W.Va.Code*, 15–2–12 [2007].

in the course of and as a result of their employment. The circuit court below concluded that the State Police does have such immunity, and dismissed a lawsuit filed by a uniformed state trooper who alleged he was injured on the job as a result of his employer's negligence.

As set forth below, we affirm the circuit court's dismissal order.

## I.

On September 20, 2005, the appellant and plaintiff below, David Hawkins, was working as a sergeant for the appellee and defendant below, the West Virginia State Police. Sergeant Hawkins was assigned to an anti-drunk driving unit, and was working in a mobile office called the "Batmobile."

Sergeant Hawkins alleges that the Batmobile has a defective door latch that protrudes approximately 1 ½ inches into the doorway at elbow level. The latch—of which there is one at each of the four doors on the Batmobile—is shaped like a hook, such that it routinely snagged the shirt sleeves of persons exiting the mobile office. Sergeant Hawkins and other state troopers had complained to their superiors, asking that the latches be modified.

On the day in question, Sergeant Hawkins was routinely exiting the Batmobile with a case slung over his shoulder. The case caught on the hook-shaped latch, yanking him backward and herniating three discs in his back. Sergeant Hawkins required emergency surgery, and now has permanent nerve damage. He was forced to take a disability retirement from the State Police.

Sergeant Hawkins filed a lawsuit against the appellee West Virginia State Police alleging that his employer's negligence in failing to repair or replace the door latch had contributed to his injuries.[3] The State Police

responded by filing a motion to dismiss the lawsuit, arguing that as a matter of law, the State Police was entitled to the immunity provided under the West Virginia Workers' Compensation Act, *W.Va.Code*, 23–2–6 [2003].[4]

In an order dated April 19, 2007, the circuit court granted the State Police's motion to dismiss the appellants' lawsuit. The circuit court concluded that the appellants' complaint failed to state a claim upon which relief could be granted because, as Sergeant Hawkins' employer, "the West Virginia State Police can not be subjected to common law claims sounding in negligence by its employees for injuries sustained on the job."

The appellants now appeal the circuit court's April 19, 2007 order.

## II.

Appellate review of a circuit court order granting a motion to dismiss a complaint is *de novo*. Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). Similarly, where the issue in an appeal from the circuit court is clearly a question of law or involves the interpretation of a statute, we apply a *de novo* standard of review. Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III.

The parties in this appeal do not dispute any facts, and agree that the sole issue for consideration is one of statutory construction. The question they ask us to resolve is whether, under the Workers' Compensation Act, a uniformed state trooper may bring a negligence action against his or her employer, the West Virginia State Police, for injuries

---

**3.** The appellants have also filed suit against the manufacturer of the Batmobile, appellee J. Mattman Security, Inc., d/b/a The Mattman Company. The appellants alleged in their complaint that J. Mattman Security negligently designed the door latch system on the Batmobile, and that that negligence caused or contributed to Sergeant Hawkins' injuries. The circuit court's order in the instant appeal did not address the appellants' claims against J. Mattman Security, and it ap-

pears the appellants are still pursuing those claims in the court below.

The complaint also asserts causes of action for consortium on behalf of Sergeant Hawkins' wife, appellee Kim Hawkins, and his children, appellees Tyler, Ashley, and Chase Hawkins.

**4.** This statute will be discussed in greater detail in Section III.

caused by the employer's ordinary negligence in the course of and as a result of the trooper's employment.[5] The appellants argue that there is no clear statutory provision in the Workers' Compensation Act making the State Police immune from suit. The appellee argues that such immunity may easily be inferred from a reading of several statutes, and from an understanding that, historically, the Legislature has statutorily accorded injured state troopers financial protection that is *better* than the protection provided under the Workers' Compensation Act.

The parties' arguments on the immunity question therefore revolve around competing interpretations of various statutes in different chapters of the *West Virginia Code.*

The appellants' argument begins by noting that the Workers' Compensation Act declares that:

> The state of West Virginia and all governmental agencies or departments created by it ... are employers within the meaning of this chapter and are required to subscribe to and pay premium taxes into the workers' compensation fund for the protection of their employees and are subject to all requirements of this chapter[.]

*W.Va.Code,* 23–2–1 [2005]. In exchange for paying workers' compensation premiums, the appellants note that employers are statutorily entitled to immunity from suit, and that workers' compensation benefits are the *exclusive* remedy for employees of employers who subscribe to the workers' compensation system. *W.Va.Code,* 23–2–6 [2003] states in part:

> Any employer subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in this section is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing

... and during any period in which the employer is not in default in the payment of the premiums ...

The appellants argue that *W.Va.Code,* 23–2–6 is clear that there are only two ways for the State of West Virginia and its agencies, as an "employer," to be immune from suit: either subscribe and pay premiums into the workers' compensation fund, or make direct payments of compensation to injured workers using a self-insured system that conforms to the Workers' Compensation Act.[6]

The appellants argue that the State Police did not subscribe to the Workers' Compensation Fund at the time Sergeant Hawkins was injured, and that the State Police has never subscribed or paid premiums into the fund. Furthermore, the appellants argue that the State Police never established a self-insured workers' compensation system that complies with the requirements of the Workers' Compensation Act. Accordingly, the appellants argue that the State Police is not statutorily entitled to immunity for work-related injuries negligently caused to its employees.

The appellee State Police concedes—as once did this Court—that "on its face" the statutes cited by the appellants would appear to require the State Police to subscribe to the workers' compensation fund. *See Beckley v. Kirk,* 193 W.Va. 258, 260, 455 S.E.2d 817, 819 (1995). However, the appellee argues that the Death, Disability and Retirement Fund for state troopers ("the DDR Fund"), found in *W.Va.Code,* 15–2–26 [2007][7], is a statutorily-created fund that allows the State Police to make "direct payments of compensation" to troopers injured on the job—and therefore, the State Police should be immune from suit under the provisions of *W.Va.Code,* 23–2–6. Supporting this conclusion, the State Police argues that the legislative history behind the creation of the DDR Fund, and the concomitant failure of the Legislature to budget for and require the State Police to pay premiums into the Workers' Compensation

---

5. Whether a uniformed employee could bring a lawsuit on other grounds—such as the employer's deliberate intent, sexual harassment, or discrimination—is an issue not being addressed by the instant case.

6. The Act sets out various standards for a self-insured system in *W.Va.Code,* 23–2–9.

7. The standards for administering the DDR Fund may be generally found in *W.Va.Code,* 15–2–25a to –52.

Fund, makes it clear that the Legislature intended for the State Police to be immune from suit for on-the-job injuries negligently caused to a state trooper, when the state trooper is eligible for benefits from the DDR Fund.

■ The appellee argues that this Court's discussion of the history surrounding the DDR Fund in *Beckley v. Kirk, supra,* provides a foundation for a decision in the instant appeal. In *Beckley v. Kirk,* this Court was asked to examine the circumstances of several state troopers who were injured in the line of duty. The troopers sought to compel the West Virginia State Police—then known as the Division of Public Safety—to participate in the workers' compensation system. The Court found that state troopers had traditionally received compensation for work-related injuries solely from the DDR Fund, and never the Workers' Compensation Fund. The issue before the Court was "whether state troopers are *also* covered under the West Virginia Workers' Compensation Act." 193 W.Va. at 260, 455 S.E.2d at 819. The Court concluded, in Syllabus Point 1, that:

> Notwithstanding the broad language of the Workers' Compensation Act § 23–2–1(a) [1991], uniformed members of the West Virginia Division of Public Safety, who are covered under the Death, Disability and Retirement Fund, are not eligible for coverage under the Workers' Compensation System.

To reach that conclusion, the Court in *Beckley v. Kirk* examined the legislative history behind the adoption of the DDR Fund and its interaction with the Workers' Compensation Fund, and reasoned that the Legislature had repeatedly considered the precise question at hand, and had repeatedly decided that the DDR Fund should be the exclusive remedy for state troopers. As the Court stated:

> The West Virginia Workmen's Compensation Fund, adopted in 1913, was amended in 1919 to allow all governmental agencies to participate. 1919 *Acts of the Legislature, Regular Session,* c. 131, § 9. The Department of Public Safety, however, was either excluded by legislative in-

tent or declined to participate. In 1922 the Superintendent of State Police, in his report to the Governor, complained that there was no pension provision or any other fund to provide troopers disabled in the line of duty a living allowance. Jackson Arnold, *Report to the Governor,* 8 (30 June 1922).

In 1923, apparently in response to the 1922 report, the Legislature authorized the Superintendent to compensate injured troopers from the DPS operating budget. 1923 *Acts of the Legislature, Regular Session,* c. 147, § 58. The 1924 report of the Superintendent complained that the funds budgeted by the 1923 Legislature would soon expire, again leaving disabled members without benefits. Jackson Arnold, *Biennial Report of the West Virginia State Police,* 12 (1924). In 1925, the Legislature created the Death and Disability Fund. 1925 *Acts of the Legislature, Regular Session,* c. 4, §§ 1, 2, 3. The purpose of the Death and Disability Fund was, and is, to provide compensation to injured state troopers.

The DPS Superintendent once again complained to the Governor in his 1928 report. This time the Superintendent expressly stated that state troopers did not receive the protection of the Workers' Compensation Fund and requested legislation to place members under such protection (although troopers would have been *much* less generously compensated under Workers' Compensation than under their own system, the Death and Disability Fund.), R.E. O'Connor, *Fifth Biennial Report of the Department of Public Safety,* 16 (1928). Subscription to the WC Fund became mandatory for state agencies in 1937, yet no effort was made to compel subscription by the DPS. 1937 *Acts of the Legislature, Regular Session,* c. 104, § 1. Moreover, the Legislature has never appropriated funds for the DPS to pay Workers' Compensation premiums.

... When viewing the history of the Death, Disability and Retirement Fund in conjunction with the history of the Workers' Compensation Fund, it becomes clear that the Legislature intended the DDR

Fund to be a comprehensive system of compensation and *never* intended for state troopers to be covered under the Workers' Compensation Fund.

If state troopers had been covered under the WC Fund it would not have been necessary to create the DDR. The reports of the DPS superintendents reinforce this conclusion. Obviously, if the WC Fund covered state troopers, the superintendents would not have complained of the lack of coverage for disabled troopers or specifically have requested coverage under the WC Fund years ago before the contours of the two systems were firmly established. That state troopers are not covered by the WC Fund is also the opinion of the administrators of the WC Fund, who have repeatedly declined to process the claims of state troopers, and the opinion of the West Virginia State Police Academy, which informs trainees that the WC Fund does not apply to state troopers. This Court has held that " '[w]here a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous.' Syllabus point 7, *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975)." Syl. pt. 8, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361, 367 (1975).

193 W.Va. at 260–61, 455 S.E.2d at 819–20 (footnotes omitted).

■ The Court in *Beckley v. Kirk* concluded that "allowing troopers coverage under both systems would frequently result in a trooper's receiving benefits in an amount that exceeds his or her salary"—a result which the Court believed would be "absurd." 193 W.Va. at 262, 455 S.E.2d at 821. "Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syllabus Point 2, *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938). Accordingly, the Court concluded in *Beckley v. Kirk* that uniformed troopers injured in the course of their em-

ployment were only entitled to benefits from the DDR Fund, and not the Workers' Compensation Fund.

The appellee asserts that while the Legislature has required most state agencies to pay premiums into the workers' compensation system since 1919, the Legislature has never budgeted money for the State Police to pay workers' compensation premiums.

Further, the appellee points out that the DDR Fund is better for troopers than the workers' compensation system because it covers both work- and non-work-related injuries, and provides state troopers with their full salary when they cannot work. Additionally, state troopers continue to accrue annual and sick leave, and are not charged for sick leave while absent from duty, when receiving benefits from the DDR Fund. As this Court acknowledged in *Beckley v. Kirk,* "[b]enefits under the DDR Fund are superior to the WC Fund." 193 W.Va. at 261, 455 S.E.2d at 820.

In sum, the appellee State Police argues that the same reasoning used by the Court in *Beckley v. Kirk* applies to the instant case. We agree.

■ Our law is clear that the construction placed on a statute by the government officers charged with executing the statute is entitled to great weight, and will not be dispensed with unless clearly erroneous. *See* Syllabus Point 7, *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975) ("Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous."); Syllabus Point 2, *State ex rel. Brandon v. Board of Control,* 84 W.Va. 417, 100 S.E. 215 (1919) ("Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown, unless it is clear that such construction is erroneous."); Syllabus Point 4, *Security Nat. Bank & Trust Co. v. First W. Va. Bancorp., Inc.,* 166 W.Va. 775, 277 S.E.2d 613 (1981) ("Interpretations of statutes by

bodies charged with their administration are given great weight unless clearly erroneous."). *See also,* Syllabus Point 4, *State ex rel. ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 514 S.E.2d 176 (1999) ("Interpretations as to the meaning and application of workers' compensation statutes rendered by the Workers' Compensation Commissioner, as the governmental official charged with the administration and enforcement of the workers' compensation statutory law of this State, pursuant to W.Va.Code § 23-1-1 (1997) (Repl.Vol.1998), should be accorded deference if such interpretations are consistent with the legislation's plain meaning and ordinary construction.").

Since 1919, when the Legislature first required state agencies to pay premiums into the workers' compensation system, the Legislature has never budgeted funds for the appellee State Police to pay premiums on behalf of its uniformed troopers. Instead, the Legislature created, and has continuously budgeted funds for, the DDR Fund. Neither the State Police nor the Workers' Compensation Commissioner has ever interpreted any legislative enactment as requiring the State Police to subscribe to the workers' compensation system, or interpreted the existing DDR Fund as being inadequate to provide uniformed state troopers with sufficient direct compensation for work-related injuries. *W.Va.Code,* 23-2-6 provides that an employer, who "elects to make direct payments of compensation" to employees injured in the course of and as a result of their employment, is not liable to respond in damages at common law for injuries negligently caused by the employer to an employee.

■ Accordingly, we believe that the circuit court correctly found that a uniformed state trooper who receives benefits from the DDR Fund is barred by *W.Va.Code,* 23-2-6 from bringing a negligence action against his or her employer, the West Virginia State Police, for injuries caused by the employer's ordinary negligence in the course of and as a result of the trooper's employment.

## IV.

The circuit court's April 19, 2007 dismissal order is therefore affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH, sitting by temporary assignment.