753 S.E.2d 886

**State of West Virginia ex rel. Angela Y. SMITH, Petitioner**

v.

**WEST VIRGINIA CRIME VICTIMS COMPENSATION FUND and the Court of Claims for the State of West Virginia, Respondents.**

No. 12–0117.

Supreme Court of Appeals of West Virginia.

Submitted: April 9, 2013.

Decided: May 24, 2013.

Mark McMillian, Esq., Mark McMillian–Attorney at Law, L.C., Charleston, for Petitioner.

John R. Homburg, Esq., Richard F. Olsen, Esq., West Virginia Legislature, Joint Committee on Government and Finance, Legislative Services Division, Charleston, for Respondents.

LOUGHRY, Justice.

The petitioner, Angela Y. Smith, has filed a petition for a writ of certiorari [1] seeking reversal of a decision of the Court of Claims for the State of West Virginia denying her compensation for unpaid student loans owed by her deceased son, Donte Newsome, a college student who was an innocent victim of murder. Ms. Smith contends that she is entitled to reimbursement for her son's unpaid student loans pursuant to the West Virginia Crime Victims Compensation Act, West Virginia Code §§ 14–2A–1 to –29 (2009 & Supp. 2012) (hereinafter "the Act"), which provides compensation to innocent victims of crime for injury suffered to their person or property. In denying her relief, the Court of Claims found that student loans are contractual obligations that cannot be reimbursed under the Act.

Upon consideration of the parties' briefs and oral argument, the submitted record, and the pertinent authorities, this Court denies the writ.

1. See Syl. Pt. 1, *Foster Foundation v. Gainer*, 228 W.Va. 99, 717 S.E.2d 883 (2011) ("'A writ of certiorari will lie from an inferior tribunal, acting in a judicial or quasi-judicial capacity, where substantial rights are alleged to have been violated and where there is no other statutory right of review given.' Syllabus point 4, in part, *North v. Board of Regents*, 160 W.Va. 248, 233 S.E.2d 411 (1977).").

## I. Factual and Procedural Background

On July 5, 2008, Donte Newsome, a student at Marshall University in Huntington, West Virginia, was shot and killed by Jeral Garner. Garner was convicted of murder and is presently serving a prison sentence. Mr. Newsome was an innocent victim and did not contribute to his own demise.

On December 7, 2009, the decedent's mother, Ms. Smith, submitted an application to the Court of Claims seeking reimbursement from the West Virginia Crime Victims Compensation Fund. She sought compensation for medical expenses, funeral and burial costs, and student loans owed by the decedent at the time of his death.[2] By order entered on September 23, 2010, Ms. Smith was granted an award of $8,184.99 for medical expenses and funeral and burial costs. She was denied compensation for the student loans. Thereafter, Ms. Smith requested a hearing concerning whether reimbursement of unpaid student loans can be made pursuant to the Act.[3] A hearing was held October 7, 2011. By order entered December 27, 2011, the Court of Claims denied Ms. Smith's request for reimbursement for her son's unpaid student loans. On June 26, 2012, Ms. Smith filed a petition for writ of certiorari with this Court seeking review of the decision of the Court of Claims.

## II. Standard for Issuance of Writ

 It has long been established that "[t]he remedy by writ of certiorari ... to review the judgment of a[n inferior tribunal], is not given as a matter of right, but is awarded by the court ... for cause on proper case shown." Syl. Pt. 1, in part, *Harrow v. Ohio River R. Co.*, 38 W.Va. 711, 18 S.E. 926 (1894); *accord W.Va. Rev. R.A.P. 16(a)* ("Issuance by the Court of an extraordinary writ is not a matter of right, but of discretion sparingly exercised."). Therefore, "[w]hen determining whether to award a writ of cer-

2. Ms. Smith cosigned the loans.

3. See W.Va.Code § 14–2A–15 (2009) (providing for hearing when claimant disagrees with denial of claim).

tiorari in a particular case, the standard for the issuance of the writ is quite limited." *Foster Foundation v. Gainer*, 228 W.Va. 99, 104, 717 S.E.2d 883, 888 (2011). To that end, "the scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision was reached." Syl. Pt. 3, *Foster*, 228 W.Va. at 101, 717 S.E.2d at 885.

█ In this case, the issue we are asked to resolve presents a question of law and involves statutory interpretation. Accordingly, we must also apply our *de novo* standard of review. *See* Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue ... is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these standards in mind, the parties' arguments will be considered.

### III. Discussion

The question presented in this case is whether unpaid student loans constitute "economic loss" that is subject to compensation from the West Virginia Crime Victims Compensation Fund. Pursuant to West Virginia Code § 14–2A–10(a)(8) (2009), an application for a compensation award from the Crime Victims Compensation Fund must include "the total amount of economic loss that the victim, a dependent or the claimant sustained or will sustain as a result of the criminally injurious conduct[.]" "Economic loss" under the Act is defined as

economic detriment consisting only of allowable expense, work loss and replacement services loss. If criminally injurious conduct causes death, economic loss includes a dependent's economic loss and a dependent's replacement services loss. Noneconomic detriment is not economic loss, however, economic loss may be caused by pain and suffering or physical impairment *For purposes of this article, the term "economic loss" includes a lost scholarship as defined in this section.*

W. Va.Code § 14–2A–3(e) (2009 & Supp. 2012)[4] (emphasis added). Pursuant to West Virginia Code § 14–2A–3(m), "lost scholarship"

means a scholarship, academic award, stipend or other monetary scholastic assistance which had been awarded or conferred upon a victim in conjunction with a post-secondary school educational program and which the victim is unable to receive or use, in whole or in part, due to injuries received from criminally injurious conduct.

Ms. Smith argues that student loans fall within the definition of "lost scholarship," particularly the phrase "other monetary scholastic assistance," and, therefore, are subject to reimbursement from the Crime Victims Compensation Fund. She contends that in formulating this provision, the Legislature, through its use of broad and sweeping terms, meant to include all forms of financial assistance received for college including student loans. Ms. Smith states that it would be counter-intuitive to conclude that the Legislature intended to limit the potential compensation to merit, academic or athletic scholarships for which the student has not obligated himself or herself financially while not addressing a clear property right obtained through personal financial obligation.

Ms. Smith further asserts that the Court of Claims erred by finding the terms "awarded or conferred" decisive in its determination that student loans could not be reimbursed under the Act. Ms. Smith contends that use of the conjunctive "or" clearly indicates an intent on the part of the Legislature to encompass a broad range of meaning. She maintains that a financial aid award includes student loans. In that regard, she notes that Marshall University states on its website that "approximately seventy-two percent (72%) of Marshall University undergraduate students receive *financial assistance in the form of* grants, *loans*, student employment and/or academic scholarships." Marshall University, *Student Financial Assistance at Marshall University*, http://www.marshall. edu/wpmus/sfa (emphasis added). Ms. Smith

---

**4.** West Virginia Code § 14–2A–3 was amended in 2011. However, the definitions of "economic loss" and "lost scholarship" remained the same.

reasons that when the purpose of the Act is considered, it must be concluded that the phrase "other monetary scholastic assistance" as used in the definition of "lost scholarship" includes student loans.

In denying Ms. Smith compensation for the student loans owed by her son at the time of his death, the Court of Claims stated in its order:

> Upon first glance, W. Va.Code § 14–2A–3(m) would appear to support the Claimant's position that lost scholarship in fact does refer to student loan payments. But a closer reading of the statute shows that the intent of the legislature was to allow compensation for scholarships awarded based on merit or other award-specific factors. The key feature of these awards is that the student possesses the award and has some vested interest. Another key feature of these types of awards is that the student is not generally obligated to repay the award. Therefore, student loans or any other contractual obligations to repay a debt do not fall under the statute.

Echoing the final order, the respondents herein, the West Virginia Crime Victims Compensation Fund and the Court of Claims for the State of West Virginia, assert that the words "awarded or conferred" as set forth in W. Va.Code § 14–2A–3(m) simply do not contemplate receipt of a loan. The respondents argue that "other monetary scholastic assistance" includes grants or work study programs, which are similar to other items specifically mentioned in the definition of "lost scholarship" that do not have to be repaid. The respondents acknowledge that colleges and universities include student loans among the types of financial assistance available to students but maintain that the Legislature specifically included only those forms of financial assistance that a student is not generally obligated to repay in the definition of "lost scholarship."

 The respondents also note that their interpretation of the relevant statutory provision is entitled to great weight pursuant to this Court's holding in *Hawkins v. West Virginia Department of Public Safety*, 223 W.Va. 253, 672 S.E.2d 389 (2008). Syllabus point four of *Hawkins* provides:

> "Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." Syllabus Point 7, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975).

223 W.Va. at 254, 672 S.E.2d at 390.

 It is well established that " '[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.' *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949)." *Mace v. Mylan Pharmaceuticals, Inc.*, 227 W.Va. 666, 673, 714 S.E.2d 223, 229 (2011); *see also* Syl. Pt. 1, in part, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous[.]"). Here, the meaning of the phrase "other monetary scholastic assistance" as set forth in West Virginia Code § 14–2A–3(m) is unclear. Reasonable minds can disagree as to its meaning which makes it ambiguous. We have held that "[a] statute that is ambiguous must be construed before it can be applied." Syl. Pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). We have also explained that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

In creating the Crime Victims Compensation Fund, the Legislature expressly declared its intent and purpose. In that regard, West Virginia Code § 14–2A–2 (2009) states:

> The Legislature finds and declares that a primary purpose of government is to provide for the safety of citizens and the inviolability of their property. To the extent that innocent citizens are victims of crime, particularly violent crime, and are without adequate redress for injury to their person or property, this primary purpose of government is defeated. The people of West Virginia are demonstrably

peaceful, and, in comparison to the citizens of other states, suffer a lower crime rate. In establishing the West Virginia Crime Reparation Act of 1981, the Legislature stated its findings that the provision of governmental services to prevent crime is not wholly effective and expressed its intent to establish a system of compensation for the victims of crime which would provide a partial remedy for the failure of the State to fully achieve this primary purpose of government.

The Legislature now finds that the system of compensation established by the act as an experimental effort by the Legislature of this State on behalf of its people, after having been reviewed and perfected in its initial stages, should be continued and retained in the legislative branch of government as an expression of a moral obligation of the State to provide partial compensation to the innocent victims of crime for injury suffered to their person or property.

In light of the stated purpose of the Crime Victims Compensation Fund and given the all-inclusive nature of the phrase "other monetary scholastic assistance" as used in West Virginia Code § 14–2A–3(m), we find that student loans fall within the definition of "lost scholarship."

■ We are certainly mindful of the deference to be accorded to the respondents' interpretation of the subject provision pursuant to *Hawkins;* however, in this instance, we find the respondents' construction of the statute to be erroneous. This Court has explained that "[i]f the Legislature has failed to provide a definition for a particular word or term it has employed in a statute, meaning can be ascribed to such statutory language by referring to the common, ordinary, accepted meaning of the undefined terminology." *West Virginia Consolidated Public Retirement Bd. v. Weaver,* 222 W.Va. 668, 675, 671 S.E.2d 673, 680 (2008). Stated another way, "[g]enerally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. Pt. 4, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959). In the context of financial aid for college, the general and ordinary meaning of "monetary scholastic assistance" encompasses student loans. As discussed above, Marshall University's website defines financial assistance for students in the form of scholarships, grants, *loans,* and student employment. Marshall University, *Student Financial Assistance at Marshall University,* http://www.marshall.edu/wpmus/sfa (emphasis added). Likewise, West Virginia University, this State's largest post-secondary school, describes its financial aid package as "including any combination of scholarships, grants, employment and/or *loans.*" *See* West Virginia University, *Financial Aid and Scholarships* (last updated March 6, 2013), http://financialaid.wvu.edu/aid-and-scholarships (emphasis added).

■ In finding that student loans did not fall within the definition of "lost scholarship," the Court of Claims found the words "awarded or conferred" to be the operative language in the statute, concluding that these words mean to "bestow upon as a gift, favor or honor" and that a student loan does not fit within that definition. However, "award" also means "to grant by formal process." *Black's Law Dictionary,* 132 (7th ed.1999). Moreover, in the context of monetary assistance for college, student loans are "awarded" to students as part of their financial aid package. *See* West Virginia University, *Financial Aid and Scholarships* (last updated March 6, 2013), http://financialaid.wvu.edu/aid-and-scholarships ("The financial aid award is based on your financial need and eligibility, and may include various types of aid. This is your financial aid package."). Accordingly, we find the respondents' construction of the term "awarded" to be erroneous. Based on all the above, we now hold that the phrase "other scholastic monetary assistance" contained within the definition of "lost scholarship" set forth in W. Va.Code § 14–2A–3(m) includes student loans.

■ Although we have found that student loans are "other scholastic monetary assistance" as set forth in West Virginia Code § 14A–2–3(m), our analysis cannot end there. The entirety of the statutory provision must be considered. As we have explained,

"[a] statute is enacted as a whole with a general purpose and intent, and each part

should be considered in connection with every other part to produce a harmonious whole. Words and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute. The general intention is the key to the whole and the interpretation of the whole controls the interpretation of its parts." Syl. pt. 1, *State ex rel. Holbert v. Robinson,* 134 W.Va. 524, 59 S.E.2d 884 (1950).

Syl. Pt. 2, *Durham v. Jenkins,* 229 W.Va. 669, 735 S.E.2d 266 (2012); *accord* Syl. Pt. 5, *Miller v. Wood,* 229 W.Va. 545, 729 S.E.2d 867 (2012) (" 'In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety.' Syllabus Point 1, *Parkins v. Londeree,* 146 W.Va. 1051, 124 S.E.2d 471 (1962).").

■ West Virginia Code § 14–2A–3(m) further provides that "lost scholarship" is a type of economic loss subject to compensation from the Crime Victims Compensation Fund, "which the victim is unable to receive or use, in whole or in part, due to injuries received from criminally injurious conduct." In other words, the "lost scholarship," whether it be in the form of a scholarship, academic award or student loan, must not have been received or used by the victim, in whole or in part, prior to the criminally injurious conduct that provided the basis for the compensation claim. Such a limitation on reimbursement for "lost scholarship" from the Crime Victims Compensation Fund is consistent with the legislative intent and stated purpose of the Act to provide "partial compensation." [5] *See* W. Va.Code § 14–2A–2.

Accordingly, we now hold that pursuant to West Virginia Code § 14–2A–3(m), economic loss that is subject to reimbursement from the West Virginia Crime Victims Compensation Fund includes "lost scholarship" only if the victim is unable to receive or use the "lost scholarship," in whole or in part, due to injuries received from criminally injurious conduct.

■ In this case, the record reflects that the student loans at issue had been received and used by the decedent prior to his death. With her application for compensation, Ms. Smith submitted documentation for three student loans for which she sought reimbursement. The first, a Tuition Answer Loan, was disbursed in October 2006, in the amount of $7,455. The second loan was for $5,000 and was disbursed on February 21, 2007, for the academic period of January 2007 through May 2007. The third loan was for $20,000 and was disbursed July 30, 2007, for the academic period of August 2007 through December 2007. Clearly, all three loans were received and, in this instance, used by Mr. Newsome prior to his death on July 5, 2008, as he had completed the semesters for which the subject loans were issued. During oral argument, counsel for Ms. Smith indicated that Mr. Newsome was not attending summer college classes at the time of his death but would have returned to college in the fall. Nonetheless, the loans for which Ms. Smith requested reimbursement were not for that fall term of school but, rather, as discussed, had been issued for prior semesters. Therefore, the student loans at issue in this case are not subject to reimbursement under the Act because they were not loans that the decedent was unable to receive or use, in whole or in part, prior to his death. [6]

---

**5.** The amount of compensation payable under the Act is also limited by West Virginia Code § 14–2A–14(g) (2009) which states:

(1) Except in the case of death, or as provided in subdivision (2) of this subsection, compensation payable to a victim and to all other claimants sustaining economic loss because of injury to that victim may not exceed $35,000 in the aggregate. Compensation payable to all claimants because of the death of the victim may not exceed $50,000 in the aggregate.

(2) In the event the victim's personal injuries are so severe as to leave the victim with a disability, as defined in Section 223 of the Social Security Act, as amended, as codified in

42 U.S.C. § 423, the court may award an additional amount, not to exceed $100,000, for special needs attributable to the injury.

**6.** With regard to the fact that this case has been decided on grounds different from those set forth in the final order of the Court of Claims, we note that "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965); *see also Yourtee v. Hubbard,* 196 W.Va. 683, 690

## IV. Conclusion

For the reasons set forth above, there is no basis to reverse the decision of the Court of Claims. Accordingly, the writ of certiorari is denied.

Writ denied.

n. 9, 474 S.E.2d 613, 620 n. 9 (1996) ("[W]e are not confined to affirming the judgment strictly on the grounds given by the lower court. In reviewing an appeal of a circuit court's order, we look not to the correctness of the legal ground upon which the circuit court based its order, but rather, to whether the order itself is correct, and we will uphold the judgment if there is another valid legal ground to sustain it.").