No. 22-765, *Monongalia County Commission, et al. v. Amanda F. Stewart*

**FILED**

**November 14, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Armstead, Chief Justice, concurring in part, and dissenting in part:**

Although I concur with much of the majority's decision in this case, I write separately because I believe that the majority misinterprets and improperly limits the West Virginia Legislature's intent in adopting the relevant provisions of The Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 *et seq.* ("Tort Claims Act") and this Court's holdings in *Albert v. City of Wheeling*, 238 W. Va. 129, 792 S.E.2d 628 (2016).

The respondent asserts that the Monongalia County Commission (hereinafter "Commission") is vicariously liable for John Doe Deputy's acts performed within the scope of his employment, and the majority agrees with the respondent as to this point. I believe, however, that the Commission properly asserted immunity from this vicarious liability claim pursuant to our holding in *Albert* and West Virginia Code § 29-12A-5(a)(5), which provides that "[a] political subdivision is immune from liability if a loss or claim results from: . . . (5) Civil disobedience, riot, insurrection or rebellion[,] or the failure to provide, or *the method of providing, police, law enforcement or fire protection.*" (Emphasis added).

The majority undertakes a detailed review of the evolution of this Court's interpretation of the phrase "the method of providing, police, law enforcement or fire protection" and concludes that this Court properly interpreted this phrase in the 2002 case

1

of *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002). At that time, this phrase was interpreted to refer to "the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." *Id.* at Syl. Pt. 4, in part. In addition, the Court in *Smith* also held that West Virginia Code § 29-12A-5(a)(5) did not provide immunity "to a political subdivision for the negligent acts of the political subdivision's employee *performing acts in furtherance* of a method of providing police, law enforcement or fire protection." *Id. at* Syl. Pt. 5 (emphasis added).

Fourteen years later, however, this Court revisited this issue in *Albert v. City of Wheeling*, and overruled syllabus point 5 of *Smith*. In *Albert,* this Court held:

> Statutory immunity exists for a political subdivision under the provisions of West Virginia Code § 29-12A-5(a)(5) (2013) if a loss or claim results from the failure to provide fire protection or the method of providing fire protection regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(2) (2013), is caused by the negligent performance of acts by the political subdivision's employees while acting within the scope of employment. To the extent that this ruling is inconsistent with syllabus point five of *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), the holding as it pertains to the negligent acts of a political subdivision's employee in furtherance of a method of providing fire protection is hereby overruled.
>
> Statutory immunity exists for a political subdivision under West Virginia Code § 29-12A-5(a)(5) (2013) if a loss or claim results from the failure to provide fire protection or the method of providing fire protection *regardless of whether such loss or claim, asserted under West Virginia Code § 29-12A-4(c)(3) (2013), is caused by the negligent failure of the political subdivision* to maintain, inspect and otherwise keep its waterworks and fire hydrant system fully operable.
>
> For purposes of the immunity provided by West Virginia Code § 29-12A-5(a)(5) (2013), a municipality's

2

policy of inspecting and maintaining its fire hydrants is directly connected to the city's method of providing fire protection.

Syl. Pts. 4, 5 & 6, *Albert*, 238 W. Va. 129, 792 S.E.2d 628 (emphasis added).

While I believe the *Albert* Court correctly interpretated the Legislative intent underlying the Tort Claims Act, the majority has now decided that the holding in *Albert* was incorrect and "represents a significant departure from our prior interpretation of West Virginia Code § 29-12A-5(a)(5) by concluding that it extends immunity to political subdivisions for the negligence of employees acting within the scope of their employment." The majority opinion now limits the above three syllabus points in *Albert* and resurrects Syllabus Point 5 from *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), in which this Court held: "W. Va. Code, 29-12A-5(a) [1986] does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection." *Id.* at Syl. Pt. 5. I strongly disagree with the majority and believe this about-face from the clear holding in *Albert* not only adds to the confusion caused by this Court's decades of inconsistent opinions relating to the application of statutory immunity but is a misreading of the clear language of the Tort Claims Act.

This Court has long held that:

"The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). If the legislative intent is clearly expressed in the statute, then this Court is not permitted to construe the statutory provision but, rather, is obliged to apply its plain language. To

3

that end, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power*, 195 W. Va. at 587, 466 S.E.2d at 438. Thus, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

*Eldercare of Jackson County, LLC v. Lambert,* 250 W.Va. 291, _____, 902 S.E.2d 840, 852

(2024). The purpose of the Tort Claims Act was plainly stated in the act:

> This article shall be known and may be cited as "The Governmental Tort Claims and Insurance Reform Act."
>
> Its purposes are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability.

W. Va. Code § 29-12A-1. Its overriding purpose is to "limit liability" and "provide immunity" in those circumstances delineated in the act. The provision relevant to this matter is found in § 29-12A-5(a)(5) which provides "[a] political subdivision is immune from liability if a loss or claim results from: . . . (5) Civil disobedience, riot, insurrection or rebellion[,] or the failure to provide or *the method of providing, police, law enforcement or fire protection.*" Nowhere within this language does the act limit immunity to certain employees of a political subdivision, much less to those who are "not employed" to provide law enforcement or fire protection services but nonetheless are involved in providing such service. Yet, the majority decision now holds that such provision only applies to "a

4

political subdivision's immunity against claims seeking to hold it vicariously liable for negligent conduct by its employees who are not employed in a police, law enforcement, or fire protection capacity, but who are performing acts in the course of their employment that are directly connected to police, law enforcement, or fire protection." While a creative attempt to distinguish the clear holding set forth in *Albert*, such distinction has no statutory basis whatsoever.

Indeed, the majority opinion merely seeks to reinstate a prior syllabus point from *Smith v. Burdette* -- a case that, as adeptly pointed out in the subsequent holding in *Albert,* was wrongly decided. The majority opinion's discussion of *Smith* reveals the fundamental flaw upon which the *Smith* decision was based. In its opinion, the majority states:

> [I]n *Smith v. Burdette*, 211 W. Va. 477, 566 S.E.2d 614 (2002), we interpreted the phrase "the method of providing police, law enforcement or fire protection" to refer only to the decision-making or planning aspect of developing policies and determining how policies are to be executed, and concluded that a political subdivision has no immunity for an employee's negligence in implementing a policy related to police, law enforcement, or fire protection. . .

While the majority correctly characterizes the holding in *Smith*, such holding was based on a fundamental misinterpretation of the Tort Claims Act, which was subsequently corrected by this Court in *Albert*. That misinterpretation stemmed from the *Smith* court's erroneous definition of the term "method of providing" law enforcement or fire protection. The decision in *Smith* limited such phrase to apply only to the "decision-making or the planning

5

process in developing a governmental policy, including how that policy is to be performed." *Smith*, 211 W. Va. at 481, 566 S.E.2d at 618.

In interpreting a legislative enactment, "'[i]f the Legislature has failed to provide a definition for a particular word or term it has employed in a statute, meaning can be ascribed to such statutory language by referring to the common, ordinary, accepted meaning of the undefined terminology.' *West Virginia Consolidated Public Retirement Bd. v. Weaver,* 222 W.Va. 668, 675, 671 S.E.2d 673, 680 (2008)." *State ex rel. Smith v. West Virginia Crime Victims Compensation Fund,* 232 W.Va. 728, 733, 753 S.E.2d 886, 891 (2013). Black's Law Dictionary defines the word "method" as "a mode of organizing, *operating, or performing* something." Black's Law Dictionary (12th ed. 2024) (emphasis added). Therefore, the immunity granted by the Tort Claims Act for the "method of providing, police, law enforcement or fire protection" by definition extends beyond the mere development of policies or planning their implementation. Such definition includes the actual acts of "operating" or "performing" the role of a law enforcement officer.

Moreover, the majority's restrictive definition, adopting the *Smith* court's narrow definition, of the phrase "method of providing" law enforcement is inconsistent with other portions of the Tort Claims Act. West Virginia Code § 29-12A-5(a)(4) provides political subdivisions with immunity for "[a]doption or failure to adopt a law, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy." If West Virginia Code § 29-12A-5(a)(5) relating to immunity for the

6

"method of providing" law enforcement was truly meant by the Legislature to be limited to the *development* of policies rather than the manner in which law enforcement was carried out, such subsection would be superfluous and unnecessary, since subsection (4) already provides immunity for the development of such policies. Indeed, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, in part, *Newark Ins. Co. v. Brown*, 218 W. Va. 346, 348, 624 S.E.2d 783, 785 (2005) (internal citations omitted). Accordingly, it must be assumed that the Legislature did not intend subsection (5) to be limited only to the development of policies. For the foregoing reasons, I believe the majority has erred in reverting to the more restrictive interpretation of the Tort Claims Act embodied in *Smith*, rather than the more recent interpretation as expressed in *Albert*, which more accurately reflects the Legislature's intent.

Accordingly, I believe the circuit court erred by denying the Commission's motion to dismiss the respondent's vicarious liability claims against the Commission, and I respectfully dissent as to the majority's decision to affirm the circuit court's denial of the motion to dismiss Count III of the Amended Complaint.[1]

---

[1] I concur with the majority's determinations, as contained in the majority opinion, (1) affirming the circuit court's denial of Petitioner's motion to dismiss based on qualified immunity (2) affirming the circuit court's dismissal, in part, of Count III of the Respondent's original complaint seeking to hold the Commission directly liable for its policy making functions, and (3) reversing the circuit court's denial of Petitioner's motion to dismiss Respondent's demand for punitive damages.

I further concur in the majority's ultimate determination that Respondent alleged sufficient facts to overcome immunity under the Tort Claims Act with regard to her allegations of negligence and/or wrongful death against John Doe Deputy contained in Count II of the Amended Complaint. However, I concur with this determination based on the fact that I believe the factual allegations were sufficient to meet the heightened pleading standard as set forth in *Hutchison v. City of Huntington*, 198 W.Va. 139, 149, 479 S.E.2d 649, 659 (1996).

I am, nonetheless, concerned with the statement within the majority opinion that when a plaintiff maintains that immunity does not apply because a defendant's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner" that plaintiff may allege such state of mind "generally with supporting facts" citing Rule 9(b) of the West Virginia Rules of Civil Procedure. To the extent that the majority's opinion may imply that Rule 9(b) excuses a plaintiff from complying with a heightened pleading standard in order to overcome a claim of immunity, I would disagree with such implication. I do not believe that the provisions of Rule 9(b) override the express holdings of this Court that heightened pleadings are required when immunity is asserted under the Tort Claims Act. Such an interpretation would essentially obviate the *Hutchinson* requirements for heightened pleadings anytime a plaintiff merely alleged malice or bad faith. However, I believe the Amended Complaint in this case contains sufficient factual allegations to meet the heightened pleadings standard at this, the Rule 12(b) stage of the proceeding. Therefore, I concur with the ultimate decision to affirm the circuit court's denial of Petitioner's motion to dismiss Count II against John Doe Deputy.